IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

KAYNE SUNSTATE INVESTORS, LLC,      )
                                    )
                                    )
                    Plaintiff,      )
                                    )
        v.                          )        C.A. No. 08-141-SLR
                                    )
ROY ELIASSON, BRYON WOLF,           )
and ALFRED WOLF,                    )
                                    )
                    Defendants.     )

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO
STAY THIS ACTION IN FAVOR OF THE RELATED ACTION CURRENTLY
PENDING IN FLORIDA OR, ALTERNATIVELY, TO DISMISS**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
John W. Shaw (No. 3362 )
Michele Sherretta Budicak (No. 4651)
James L. Higgins (No. 5021)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
302-571-6600
jshaw@ycst.com

*Attorneys for Defendants Roy Eliasson, Bryon Wolf,
and Alfred Wolf*

Dated:  April 2, 2008

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................... iii

TABLE OF EXHIBITS ............................................................................. vii

NATURE AND STAGE OF THE PROCEEDINGS ..................................... 1

SUMMARY OF ARGUMENT .................................................................... 2

STATEMENT OF FACTS .......................................................................... 4

     A.    The Parties .................................................................................. 4

     B.    Kayne's Investment In Defendants' Businesses ....................... 4

     C.    The Purchase Agreement .......................................................... 6

     D.    The Federal Trade Commission Litigation ............................... 7

ARGUMENT ............................................................................................. 9

     I.    THIS CASE SHOULD BE STAYED OR DISMISSED
         IN LIGHT OF THE FLORIDA ACTION ............................... 9

         A.    Kayne's Complaint Violates The Florida Stay Order ............... 9

         B.    Kayne's Complaint Is Dependent Upon
              A Finding Of Liability In The Florida Action .......................... 10

     II.    THE COMPLAINT SHOULD BE DISMISSED
          PURSUANT TO RULE 12(B)(1) BECAUSE
          THE CLAIMS ALLEGED ARE NOT RIPE ......................... 12

          A.    The Case Is Not Fit For Judicial Decision .............................. 13

          B.    Kayne Will Not Suffer Any Hardship If The
             Court Withholds Consideration ............................................... 14

     III.    COUNTS I AND II OF THE COMPLAINT SHOULD
           BE DISMISSED FOR FAILURE TO SATISFY THE
           PLEADING REQUIREMENTS OF FEDERAL RULE
           OF CIVIL PROCEDURE 9(b). ............................................. 15

A.      Kayne Does Not Plead With Particularity Any
        Allegations About Who Made The Allegedly
        False Statements, Who Heard Those Statements,
        Or When Statements Were Allegedly Made..............................................16

B.      Kayne Fails To Plead Falsity In Compliance With The Rules..................21

IV.     THE PURCHASE AGREEMENT BARS KAYNE'S BREACH
        OF CONTRACTUAL REPRESENTATIONS AND
        WARRANTIES CLAIM AS A MATTER OF LAW...........................................23

A.      Section 8.3 Of The Purchase Agreement Clearly
        And Unambiguously Applies To Count III Of The Complaint.................24

B.      Kayne Has Not Alleged The Existence Of Either
        Condition Precedent Necessary To Seek
        Diminution In Value Damages For Alleged
        Breach Of Representations And Warranties..............................................26

CONCLUSION.......................................................................................................................29

ii

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                      <u>Page(s)</u>

*Abbott Labs. v. Gardner,*
   387 U.S. 136 (1967)..................................................................................................12, 13

*Armstrong World Industries, Inc. v. Adams,*
   961 F.2d 405 (3d Cir. 1992)................................................................................................13

*Atkinson v. Lafayette College,*
   460 F.3d 447 (3d Cir. 2006)................................................................................................24

*Baker v. MBNA Corp.,*
   C.A. No. 05-272 (GMS),
   2007 U.S. Dist. LEXIS 48892 (D. Del. July 6, 2007) ..........................................................19

*Bechtel Corp. v. Laborers' Int'l Union,*
   544 F.2d 1207 (3d Cir. 1976)..............................................................................................11

*Bell Atlantic Corp. v. Twombly,*
   127 S.Ct. 1955 (2007).....................................................................................................17, 28

*Brug v. Enstar Group, Inc.,*
   755 F. Supp. 1247 (D. Del. 1991)........................................................................................22

*Brzoska v. Olson,*
   668 A.2d 1355 (Del. 1995) ..................................................................................................15

*Cheyney State College Faculty v. Hufstedler,*
   703 F.2d 732 (3d Cir. 1983)..................................................................................................9

*Cincinnati SMSA Ltd. P'Ship v. Cincinnati Bell Cellular Sys. Co.,*
   708 A.2d 989 (Del. 1998) ....................................................................................................24

*Commissariat a l'Energie Atomique v. Dell Computer Corp.,*
   C.A. No. 04-99-KAJ,
   2004 U.S. Dist. LEXIS 9107 (D. Del. May 13, 2004)...................................................9, 11, 12

*Eames v. Nationwide Mut. Ins. Co.,*
   412 F. Supp. 2d 431 (D. Del. 2006)......................................................................................24

*E.I. DuPont de Nemours & Co. v. Allstate Ins. Co.,*
   693 A.2d 1059 (Del. 1997) ..................................................................................................24

*Federal Trade Commission v. 3R Bancorp,*
   C.A. No. 04 C 7177,
   2005 U.S. Dist. LEXIS 12503 (N.D. Ill. Feb. 23, 2005) ...............................................8, 9, 10

DB02:6685018.12                                                                              067235.1001

*Frederico v. Home Depot,*
   507 F.3d 188 (3d Cir. 2007)................................................................................17

*GB Biosciences Corp. v. Ishihara Sangyo Kaisha Ltd.,*
   270 F. Supp. 2d 476 (D. Del. 2003)................................................................24, 25

*Gen. Motors Corp. v. New A.C. Chevrolet, Inc.,*
   263 F.3d 296 (3d Cir. 2001)................................................................................27

*Gov't Emples. Ret. Sys. v. Turnbull,*
   134 Fed. Appx. 498 (3d Cir. 2005)......................................................................14

*Griffin Corporate Servs., LLC v. Jacobs,*
   C.A. No. 396-N,
   2005 Del. Ch. LEXIS 120 (Del. Ch. Aug. 11, 2005)...........................................27

*Interim Healthcare, Inc. v. Spherion Corp.,*
   C.A. No. 18977 NC,
   2003 Del. Ch. LEXIS 130 (Del. Ch. 2003)..........................................................25

*Klein v. General Nutrition Cos.,*
   186 F.3d 338 (3d Cir. 1999)................................................................................18

*Koch v. Koch Indus.,*
   203 F.3d 1202 (10th Cir. 2000) ..........................................................................20

*Lum v. Bank of Am.,*
   361 F.3d 217 (3d Cir. 2004)........................................................................4, 5, 21

*Mathews v. Kidder, Peabody & Co.,*
   260 F.3d 239 (3d Cir. 2001)..........................................................................25, 26

*McCracken v. Raghbir,*
   C.A. No. 02-1482-JJF,
   2004 U.S. Dist. LEXIS 20819 (D. Del. Oct. 7, 2004) .........................................20

*McLachlan v. Wilmington Dry Goods Co.,*
   22 A.2d 851 (Del. 1941) .....................................................................................25

*MDNet, Inc. v. Pharmacia Corp.,*
   147 Fed. Appx. 239 (3d Cir. 2005).................................................................17, 18

*In re: Newbridge Networks Sec. Litig.,*
   962 F. Supp. 166 (D.D.C. 1997) .........................................................................20

*Northwestern Nat'l Ins. Co. v. Esmark, Inc.,*
   672 A.2d 41 (Del. 1996) .....................................................................................25

*Pension Benefit Guar. Corp. White Cons. Inds.*,
   998 F.2d 1192,1196 (3d Cir. 1993)……………………………………………………4

*Philadelphia Fed'n of Teachers v. Ridge*,
   150 F.3d 319  (3d Cir. 1998)........................................................................12, 14

*Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio*,
   40 F.3d 1454 (3d Cir. 1994) ...........................................................................12

*Reyes v. Freeberry*,
   C.A. No. 02-1283-KAJ,
   2004 U.S. Dist. LEXIS 15018 (D. Del. July 30, 2004) ............................................12

*Rolo v. City Investing Co. Liquidating Trust*,
   155 F.3d 644 (3d Cir. 1998)........................................................................16, 20

*Saporito v. Combustion Eng'g*,
   843 F.2d 666 (3d Cir. 1988)............................................................................19

*S.C. Johnson & Son, Inc. v. DowBrands, Inc.*,
   167 F. Supp. 2d 657 (D. Del. 2001).....................................................................13

*Sendar Co. v. Megaware Inc.*,
   705 F. Supp. 159 (S.D.N.Y 1989) .....................................................................20

*Skylon Corp. v. Guilford Mills, Inc.*,
   93 Civ. 5581 (LAP),
   1997 U.S. Dist. LEXIS 2104 (S.D.N.Y. Mar. 3, 1997) ...........................................20

*Smiley v. Chrysler*,
   C.A. No. 07-05-SLR,
   2008 U.S. Dist. LEXIS 14124 (D. Del. Feb. 21, 2008) ...........................................17

*Smithkline Beecham Corp. v. Apotex Corp.*,
   C.A. No. 03-3365,
   2004 U.S. Dist. LEXIS 13907 (E.D. Pa. July 16, 2004)...........................................12

*Solomon v. Guardian Life Ins. Co.*,
   C.A. No. 96-1597,
   1996 U.S. Dist. LEXIS 18342 (E.D. Pa. Dec. 11, 1996)………………………………...27

*Student Fin. Corp. v. Royal Indem. Co.*,
   C.A. No. 03-507-JJF,
   2004 U.S. Dist. LEXIS 4952 (D. Del. Mar. 23, 2004) .......................................16, 19

*Sullivan v. Thrifty, Inc.*,
   C.A. No. 82-C-803-B,
   1983 U.S. Dist. LEXIS 11181 (D. Okla. 1983) .....................................................25

v

*In re Suprema Specialties, Inc. Sec. Litig.*,
    438 F.3d 256 (3d Cir. 2006)..................................................................16, 23

*Toner v. Allstate Ins. Co.*,
    821 F. Supp. 276 (D. Del. 1993)..........................................................16

Rules

Fed. R. Civ. P. 8(a) ...................................................................................17

Fed. R. Civ. P. 9(b) ...........................................15, 16, 17, 18, 19, 20, 22, 23, 26

Fed. R. Civ. P. 9(g) ..................................................................................26

Fed. R. Civ. P. 12(b)(6)..............................................................................24

Fed. R. Civ. P. 12(b)(1)..............................................................................15

Fed. R. Civ. P. 1202..................................................................................28

Other Authorities

*Moore's Federal Practice, § 9.03[1][g]* ...........................................................22

*Moore's Federal Practice, § 101.70[2] (3d ed. 2008)*.............................................12

*Moore's Federal Practice, § 101.72*...............................................................14

*Moore's Federal Practice, § 101.76[2]* ...........................................................14

*Wright and Miller, Federal Practice and Procedure, § 1202* .....................................28

**TABLE OF EXHIBITS**

Exhibit

Interest Contribution and Preferred Unit Purchase
Agreement, dated March 31, 2007 ("Purchase Agreement"), ........................................................A

LLC Agreement Amended and Restated Operating Agreement
of Sunstate Holdings, LLC, dated March 31, 2007 ("LLC Agreement").......................................B

Preliminary Injunction Order...........................................................................................................C

DB02:6685018.12                                                              067235.1001

## NATURE AND STAGE OF THE PROCEEDINGS

The complaint filed by Kayne Sunstate Investors, LLC ("Kayne" or "plaintiff") asserts three causes of action – fraudulent misrepresentation (Count I), negligent misrepresentation (Count II), and breach of contractual representations and warranties (Count III). Each cause of action, however, is unabashedly dependent upon – and barred by – an earlier-filed action pending in the United States District Court for the Middle District of Florida (the "Florida action").

The Florida action was filed in July 2007 by the Federal Trade Commission ("FTC") and alleges that various businesses, owned jointly by Kayne and the defendants here, did not comply with the Federal Trade Commission Act. The three defendants here Roy Eliasson, Bryon Wolf and Alfred Wolf (collectively "Defendants") are defendants in the Florida action. All defendants in the Florida action are covered by a stay order that – like the automatic stay in bankruptcy – enjoins all persons from bringing any litigation against them. Discovery is ongoing in the Florida action, and a trial date is set for July 2009.

Kayne filed this litigation in the Delaware Superior Court on February 8, 2008 in violation of the Florida stay order. Defendants removed the litigation to this Court on March 7, 2008. Because Kayne's complaint violates the Florida stay order and is procedurally deficient, Defendants respectfully submit this action should be stayed or dismissed.

## SUMMARY OF ARGUMENT

1.      The Florida stay order applies to the Defendants here.  Because the Florida stay order enjoins all persons from bringing litigation against the Defendants, the court should stay this action in its entirety.

2.      Kayne's complaint concedes that its causes of action are dependent upon the outcome of the Florida action.  For example, Kayne concedes in paragraph 17 (and elsewhere) in its complaint that the outcome of this case will be determined by the outcome of the FTC's claims in the Florida action:

> If the allegations of the FTC Suit are correct, all of the foregoing promises, representations and warranties were materially false . . .

Because Kayne's allegations are dependent upon the outcome of the Florida action, a stay or dismissal of this litigation is warranted.

3.      The fact that Kayne's complaint is contingent upon the outcome of the Florida action also raises serious questions about the ripeness of the complaint and about this Court's power to entertain this litigation.  This Court has previously dismissed, on ripeness grounds, similar allegations in which liability was dependent upon the outcome of litigation pending elsewhere.

4.      Should the Court not stay or dismiss this case on the grounds set forth above, the complaint remains fundamentally flawed in two key respects:

      a.      <u>First</u>, Counts I and II fail to allege fraud with any particularity as required by Federal Rule of Civil Procedure 9(b).  Kayne asserts fraudulent activity during lengthy negotiations leading up to the execution of a detailed Interest Contribution and Preferred Unit Purchase Agreement (the "Purchase Agreement") that obligated Kayne to make a $25 million investment, yet Kayne fails to identify who made the allegedly fraudulent

2

statements, to whom those statements were made, or when those statements were made –
all allegations Kayne is required to make with particularity under Rule 9(b). Also in
violation of Rule 9(b), Kayne describes the allegedly fraudulent statements in only the
broadest of terms, and – perhaps most egregiously – couches its allegations regarding the
falsity of the statements on information and belief. In short, Counts I and II are fatally
flawed and should be dismissed.

      b.     <u>Second</u>, Count III is barred as a matter of law by a clear and unambiguous
provision of the Purchase Agreement. Count III is a claim for breach of the
representations and warranties found in the Purchase Agreement, and Kayne seeks to
recover the diminution in value of its investments as its damages for this alleged breach.
In the Purchase Agreement, however, Kayne agreed that it would not bring any such
claim absent an <u>actual loss</u> of Kayne's investment or an <u>inability</u> of the operating
businesses to satisfy their obligations when due. Neither condition precedent to Count III
has occurred, and Kayne accordingly has not and cannot allege that either condition
precedent has been satisfied. As such, Count III is barred by the parties' agreement and
should also be dismissed.

DB02:6685018.12                                   067235.1001

**STATEMENT OF FACTS**[1]

A.    The Parties.

Plaintiff Kayne is a Delaware limited liability company with its principal place of business in Los Angeles, California. (Complaint, ¶ 6).

Defendants Roy Eliasson, Bryon Wolf and Alfred Wolf (collectively "Defendants") are residents of the State of Florida, where they currently live with their families. (*Id.*, ¶¶ 7-9). Defendants are the founders of several discount membership service and related businesses (the "Operating Businesses") that are based in Florida and that conduct business throughout the United States. (*Id.*, ¶ 14).

B.    Kayne's Investment In Defendants' Businesses.

The Operating Businesses have been serving customers for over 10 years. (Complaint, Exh. A, ¶¶ 5-13). Kayne sought to make an investment in these businesses, and over the last quarter of 2006 and the first quarter of 2007 the parties conducted negotiations during which they discussed the terms of such an investment. (Complaint, ¶ 14). Kayne also conducted extensive due diligence, and Kayne hired outside counsel (Venable LLP) to review the

---

[1]    This Statement of Facts is drawn from the allegations in the complaint, along with the "exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim," as is permitted on a motion to dismiss. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004). The purpose of this rule is to prevent plaintiffs from surviving motions to dismiss by deliberately omitting from the complaint documents upon which a claim is based. *Pension Benefit Guar. Corp. White Cons. Inds. Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("Otherwise a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied.").

The complaint contains numerous mischaracterizations and errors of fact, however, and the Defendants in no way concede the accuracy of Kayne's allegations for any purpose other than the resolution of this motion.

telemarketing processes and procedures of these businesses. Through this review Kayne learned

about most, if not all, of the alleged problems that the FTC later raised in the Florida action.

After completing its due diligence and becoming fully informed about the business and

marketing practices of the Operating Businesses, Kayne committed to making an initial

investment of $20 million, (id., ¶ 18), to be followed by $5 million of senior debt financing "as

soon as reasonably practicable" (collectively the "Purchase Price"). (Purchase Agreement,

§3.3).[2] In return, Kayne received 20,000 Series A Convertible Redeemable Preferred Units

("Series A Units) of Sunstate Holdings, LLC (the "Company"), which owns the Operating

Businesses.

The Sunstate Holdings, LLC Agreement established an "Original Issue Price" of $1,000

per Series A Unit, subject to adjustment for splits, reverse splits and other comparable events.

(See LLC Agreement Amended and Restated Operating Agreement of Sunstate Holdings, LLC,

dated March 31, 2007 ("LLC Agreement"),[3] Recitals and Definitions). The LLC Agreement

further provides that the first occasion on which Kayne can redeem its Series A Units is March

31, 2012. (LLC Agreement, §3.4.6). The transaction closed on March 31, 2007. (Complaint,

¶ 18).

---

[2]    The Purchase Agreement is cited throughout the complaint and thus qualifies as a
document that may be considered on this motion to dismiss because it is "'integral to or
explicitly relied upon in the complaint.'" *Lum,* 361 F.3d at 222 n.3. The Purchase
Agreement can be found in Appendix Exhibit A.

[3]    The "LLC Agreement" is incorporated into the Purchase Agreement and is referenced in
this brief for background only. The motion to dismiss does not turn on the LLC
Agreement. The LLC Agreement can be found in Appendix Exhibit B.

C.    The Purchase Agreement.[4]

The Purchase Agreement contained several representations and warranties for the benefit

of Kayne, as detailed in the complaint. (*See* Complaint, ¶¶ 20-23).   These representations and

warranties were made by both the defendants and the Operating Businesses, and the defendants

and Operating Businesses agreed to be jointly and severally liable for any breaches or

misstatements. (Purchase Agreement, Article 4 and §8.2).

In exchange, the Purchase Agreement established only a narrow set of circumstances in

which Kayne could sue for breach of these representations and warranties.  These limited

circumstances are established in Article 8 of the Purchase Agreement.  Section 8.2(a), for

example, establishes that "indemnification" is the remedy for breach of any representations or

warranties:

> Indemnification by the Sellers, the Company, the Operating
> Subsidiaries and the Founders. Sellers, the Company, the
> Operating Subsidiaries, and the Founders [including Defendants]
> agree, jointly and severally, to indemnify and hold harmless the
> Purchaser [Kayne] . . . (a "Purchaser Indemnitee") from and
> against . . . any and all direct or indirect claims, suits, actions,
> proceedings, liabilities, obligations, judgments, fines, penalties,
> claims, losses, damages, diminution in value, lost profits, costs and
> expenses of any kind . . . together with any and all reasonable costs
> and expenses associates with the investigation of the same and/or
> the enforcement of the provisions hereof and thereof (collectively,
> "Losses"), which may be incurred . . . relating to, based upon,
> resulting from or arising out of:
>
> > (a) the breach of any representation or warranty made by
> > any of the Sellers, the Company, the Operating Subsidiaries or
> > the Founders in this Agreement or in any Related Document as
> > of the date hereof and as of the Closing Date.

---

[4]    The Purchase Agreement is governed by Delaware law. (Purchase Agreement, § 9.2).

Similarly, Section 8.4 sets a $400,000 minimum amount of losses which Kayne must suffer

before it is permitted to recover for any kind of breach, and Section 8.5 sets an indemnity cap

equal to the Purchase Price paid by Kayne.

Section 8.3 is the limitation that is directly at issue in this motion.  Section 8.3 contains

an agreement by Kayne not to make any claim for breach of representations or warranties unless

it has actually lost the Original Purchase Price or unless the Company or the Operating

Businesses become unable to meet their obligations under the Purchase Agreement or the LLC

Agreement.  Section 8.3 states in relevant part:

> Conditions to and Limitations on Indemnification. . . .  [A]
> Purchaser Indemnitee shall not be entitled to make a claim for
> indemnification under a "diminution in value" theory pursuant to
> Sections 8.2(a), (b) or (f) unless the Losses that are the subject of
> such claim result in (a) an actual loss of any portion of the Original
> Issue Price (as such term is defined in the Restated LLC
> Agreement) to the Purchaser, or (b) a material change in the
> condition (financial or otherwise) or results of operations of the
> Company, the Operating Subsidiaries or the Business such that the
> Company, Operating Subsidiaries or Business will not be able to
> meet its obligations under this Purchase Agreement or the Restated
> LLC Agreement executed even herewith.

(Purchase Agreement, §8.3).

D.    The FTC Litigation.

On July 23, 2007, the FTC filed a complaint in the United States District Court for the

Middle District of Florida, Tampa Division against the Company, the Operating Businesses,

Messrs. Eliasson, Wolf, and Wolf, and others.  This complaint sought injunctive and other

equitable relief for alleged violations of the Federal Trade Commission Act, the Telemarketing

and Consumer Fraud and Abuse Prevention Act, and the FTC's Trade Regulation Rule entitled

"Telemarketing Sales Rule."  (Complaint, Exh. A).

7

There is currently a preliminary injunction in place in the Florida action designed to preserve assets belonging to the Company, the Operating Businesses, and the Defendants.  The stay provisions of the order state that:

> Except by leave of this Court, during pendency of the receivership ordered herein, Defendants and all other Persons and entities be and hereby are stayed from taking any action to establish or enforce any claim, right, or interest for, against, on behalf of, in, or in the name of, the Receivership Defendants [including the Operating Businesses], any of their subsidiaries, affiliates, partnerships, Assets, Documents, or the Receiver or the Receiver's duly authorized agents acting in their capacities as such, including, but not limited to, the following actions:
>
> > a.  Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding, except that such actions may be filed to toll any applicable statute of limitations;
> >
> > *   *   *
> >
> > c.  Executing, issuing, serving, or causing the execution, issuance or service of, any legal process, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process whether specified in this Order or not.

(Preliminary Injunction Order at 27-28) (Appendix Exhibit C).

At least one other court has interpreted this language to encompass claims like those posed by the complaint here, e.g., claims against persons who own or control one or more of the defendants under receivership.  *See, e.g.*, *FTC v. 3R Bancorp*, C.A. No. 04C-7177, 2005 U.S. Dist. LEXIS 12503, at *9-10. (N.D. Ill. Feb. 23, 2005).

DB02:6685018.12                                                                                                067235.1001

**ARGUMENT**

I.    **THIS CASE SHOULD BE STAYED OR DISMISSED
      IN FAVOR OF THE FLORIDA ACTION.**

The court has inherent power to manage its docket and to issue a stay where necessary to

avoid duplicative or wasteful litigation. *Cheyney State College Faculty v. Hufstedler*, 703 F.2d

732, 737-38 (3d Cir. 1983) ("[T]he power to stay proceedings is incidental to the power inherent

in every court to control the disposition of the causes on its docket with economy of time and

effort for itself, for counsel, and for litigants.") (*citing Landis v. North American Co.*, 299 U.S.

248, 254-55 (1936)); *Commissariat a l'Energie Atomique v. Dell Computer Corp.*, C.A. No. 03-

484-KAJ, 2004 U.S. Dist. LEXIS 9107, at *6 (D. Del. May 13, 2004) (same).

This litigation is an inappropriate and unnecessary use of the Court's and the parties'

resources.  If not dismissed, this litigation should be stayed in favor of the Florida action.

A.    **Kayne's Complaint Violates The Florida Stay Order.**

As noted above in the Statement of Facts, Section D, an injunction exists in the Florida

action against litigation brought against any affiliate of the Operating Businesses.  Other courts

have interpreted similar injunction language – and particularly the term "affiliates" – to

encompass persons who own or control the businesses that are subject to the FTC receivership.

*See, e.g.*, *3R Bancorp*, 2005 U.S. Dist. LEXIS 12503, at *9-10.

Kayne admits throughout the complaint that the Defendants are owners of the Operating

Businesses.  As such, the complaint demonstrates that Defendants are within the scope of the

stay in the Florida action.  This litigation thus falls afoul of the stay and should be stayed or

dismissed.

Kayne's complaint, moreover, contravenes the purpose of the Florida stay order.  Stay

orders in FTC litigations are designed "to ensure that, should the FTC prevail on the merits . . . ,

9

monies are available for the restitution of deceived consumers."[5] *See id.* at \*10.  Permitting this

litigation to proceed in violation of the Florida stay order thus puts at risk the very assets that

were intended to be preserved by the stay – directly and via the joint and several liability

provisions of the Purchase Agreement, which make the Company and the Operating Businesses

jointly and severally liable with the Defendants here.  Allowing cases like this one to proceed

surely was not intended by the Florida court when it issued the stay, and it explains why, in

analogous circumstances, the *3R Bancorp* court extended the stay to owners and controlling

persons.

### B.    Kayne's Complaint Is Dependent Upon A Finding Of Liability In The Florida Action.

The Complaint concedes in numerous places that liability here is premised upon a finding

of liability in the Florida action:

- "*Upon information and belief* . . . the Defendants and their businesses were under active investigation by the FTC and, *according to allegations made in a complaint* filed by the FTC in July 2007 . . . were operating their telemarketing business in violation of the FTCA and FTC regulations." (Complaint, ¶ 3).

- "*If the allegations in the FTC Suit are correct,* all of the foregoing promises, representations and warranties were materially false . . . ." (Complaint,¶ 17).

- "*The FTC alleged in the FTC Complaint that*, at the time the Defendants entered into the Purchase Agreement, they, the [Operating Businesses] and their telemarketing operations were in violation of several FTCA provisions and FTC regulations." (Complaint, ¶ 27).

- "*[T]he FTC asserts that* the [Operating Businesses], the Defendants and their telemarketing operations violated these laws by engaging in unfair or deceptive acts . . . ." (Complaint, ¶ 28).

---

[5]    References to the possibility of consumers being compensated for harm is in no way a concession of wrongdoing or liability in the Florida action, but is only for purposes of argument on this motion.

- "*The FTC Complaint asserts* that Defendants . . . either misrepresented, failed to disclose or disclosed inadequately several material facts to consumers . . . . *Those allegations* are inconsistent with the representations made by Defendants to Plaintiff prior to entering the Purchase Agreement." (Complaint, ¶ 29).

- "*[I]f the allegations in the FTC Complaint are true*, [Defendants'] promises, representations, and warranties that their operations were completely lawful were [] false." (Complaint, ¶ 34).

- "*[I]f the allegations in the FTC Complaint are true*, [Defendants'] promises, representations, and warranties that their operations were lawful also were false." (Complaint, ¶ 43).

- "*If the FTC's allegations are proven true*, the Defendants breached their promises, representations, and warranties . . . ." (Complaint, ¶ 52).

As plaintiff's own words show, the factual predicate for the complaint is largely dependent upon a finding of liability in the Florida action. If the FTC is unsuccessful and the Defendants do not have any liability, then almost all[6] of the claims asserted by Kayne will have no basis in fact and, consequently, will fail. It is in exactly this situation that a stay benefits the court and the public by preventing two courts from adjudicating the same facts at the same time and thus avoids waste of judicial resources.

Courts often enter stay orders in similar situations. For example, in *Bechtel Corp. v. Laborers' Int'l Union*, 544 F.2d 1207 (3d Cir. 1976), the Court of Appeals affirmed a stay, explaining that "a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." *Id.* at 1215. Likewise, in *Commissariat a l'Energie Atomique*, C.A. No. 03-484-KAJ, 2004 U.S. Dist. LEXIS 9107, the court entered a stay for some defendants in a consolidated action because resolution of the

---

[6]    The only allegations Kayne makes that are not contingent upon the outcome of the Florida action are its assertions that Defendants were under investigation by the FTC at the time the parties were negotiating the Purchase Agreement. These allegations fail for other reasons, as set forth *infra* at III.B.

balance of the claims would narrow the issues. The court explained that a stay was justified to "conserv[e] judicial resources and expense to the parties." *Id.*, at *11. *See also Smithkline Beecham Corp. v. Apotex Corp.*, C.A. No. 03-3365, 2004 U.S. Dist. LEXIS 13907, at *20, *32 (E.D. Pa. July 16, 2004) (staying action pending the outcome of a separate litigation that would "simpl[ify] these proceedings, conserve judicial resources, and avoid potentially needless discovery."); *Reyes v. Freeberry*, C.A. No. 02-1283-KAJ, 2004 U.S. Dist. LEXIS 15018, at *7-8 (D. Del. July 30, 2004) (staying criminal action pending the resolution of a related civil action because, *inter alia*, "staying this case promotes the interests of justice and judicial efficiency."). Defendants respectfully submit that such a stay is appropriate here.

## II.    THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(1) BECAUSE THE CLAIMS ALLEGED ARE NOT RIPE.

The contingent nature of the complaint also counsels in favor of dismissal on ripeness grounds. The ripeness doctrine "prevents the courts from becoming entangled in purely abstract or theoretical disagreements." 15 *Moore's Federal Practice*, § 101.70[2] at 101-148.3 (3d ed. 2008). Where an action is not ripe, the Court will not have subject matter jurisdiction and the case should be dismissed. *Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir. 1994) ("The existence of a case and controversy is a prerequisite to all federal actions . . . ."). "It is the plaintiffs' responsibility to clearly allege facts that invoke the court's jurisdiction." *Philadelphia Fed'n of Teachers v. Ridge*, 150 F.3d 319, 322-23 (3d Cir. 1998).

Ripeness is a two-prong inquiry. The court must consider 1) "the fitness of the issues for judicial decision," and 2) "the hardship to the parties of withholding court consideration." *Abbott*

*Labs. v. Gardner*, 387 U.S. 136, 149 (1967). As set forth below, Kayne fails to meet the requirements of either prong of this test.

### A.    This Case Is Not Fit For Judicial Decision.

This case is not fit for judicial decision because the allegations of the complaint are contingent upon the outcome of the Florida action. Specifically, as detailed above, Kayne concedes that if the Florida action does not result in the liability of the Operating Businesses or the Defendants, Kayne has no basis for asserting that the Defendants' representations were false.

The contingent nature of similar allegations has resulted in dismissal for lack of ripeness in at least one prior decision in this district. In *S.C. Johnson & Son, Inc. v. DowBrands, Inc.*, 167 F. Supp. 2d 657 (D. Del. 2001), the plaintiff sought a declaration[7] that the defendant was required to satisfy any judgment the plaintiff might suffer in an unrelated litigation. *Id.* at 667. As framed in the *S.C. Johnson* complaint, the defendant's liability would not be established until the other litigation was completed. The court noted that if the plaintiff was successful in the other litigation, no relief would be needed. In those circumstances, the court held the claims were unripe and refused to hear the case. *Id.* at 668-69. Because Kayne has framed its claims as being contingent upon the outcome of the Florida action, the same result should occur here.

The facts that underlie Kayne's allegations of loss are also highly contingent. Kayne made its $20 million investment with the understanding that the first opportunity it would have to see any return on the investment would be at least five years from the transaction's closing date, e.g., March 31, 2012. (LLC Agreement, ¶ 3.4.6). Despite these facts, Kayne's claims for damages, as plead in the complaint, are based on its assumption that the Company's current

---

[7]     The ripeness analysis applies regardless of whether declaratory relief is sought. *Armstrong World Industries, Inc. v. Adams*, 961 F.2d 405, 410 (3d Cir. 1992) ("The case or controversy requirement must be met regardless of the type of relief sought. . . .").

financial state will cause it to be unable to fulfill its obligations to Kayne in the year 2012. Such claims are not ripe because there is no certainty as to whether Kayne will, in fact, suffer an injury at this future time. *Gov't Emples. Ret. Sys. v. Turnbull*, 134 Fed. Appx. 498, 501 (3d Cir. 2005) (dismissing as unripe plaintiffs' request for an order compelling the government to comply with its contractual obligation to fund a retirement plan that had a current unfunded liability of over $500,000 where plaintiff failed "to demonstrate a specific harm, either present or future"); *Moore's Federal Practice*, §101.72 at 101-148.5 ("If a plaintiff has not yet suffered a concrete injury-in-fact, he or she lacks standing, even though it is possible that in the future such an injury will occur.").

Accordingly, until the facts that underlie Kayne's claims can be determined (i.e. the Florida Action is resolved) or until Kayne actually suffers a loss, this action is not ripe for adjudication.

**B.    Kayne Will Not Suffer Any Hardship If The Court Withholds Consideration.**

The second prong of the ripeness analysis "focuses on the hardship that may be entailed in denying judicial review, and the determination whether any such hardship is cognizable turns on whether the challenged action creates a 'direct and immediate' dilemma for the parties, such that the lack of pre-enforcement review will put the plaintiffs to costly choices." *Philadelphia Fed'n of Teachers*, 150 F.3d at 323. The harm alleged must be actual present harm. *See Moore's Federal Practice*, § 101.76[2] at 101-160.4 ("The hardship analysis is unconcerned with wholly contingent harm.").

The complaint fails to meet the requirements of this test. Kayne cannot demonstrate that it will suffer any hardship if this action is not adjudicated now. Kayne has not alleged the possibility of any "direct and immediate" dilemma; rather it has alleged the possibility of a

14

dilemma at some as of yet unknown point in the future. Kayne faces no "choices" with regard to

its investment in the Company in the immediate future; let alone "costly" ones. Its attempt at

unwinding a past transaction based on what it assumes will happen in the future is improper and

fails to confer jurisdiction on this Court.

Because the claims that Kayne has alleged are not ripe, this Court should dismiss the

complaint for a lack of subject matter jurisdiction, pursuant to Rule 12(b)(1).

## III.    COUNTS I AND II OF THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO SATISFY THE PLEADING REQUIREMENTS OF FEDERAL RULE OF CIVIL PROCEDURE 9(b).

Count I of the complaint alleges fraudulent misrepresentation. A plaintiff claiming

fraudulent misrepresentation must allege:

> (1)    that the defendant made a false representation of material fact to the plaintiff;
>
> (2)    that the defendant had knowledge that the representation was false, while the plaintiff was unaware of the representation's falsity;
>
> (3)    that the representation was made with the intent that the plaintiff believe the representation, act in reliance on the representation, and be deceived by the representation; and
>
> (4)    that the plaintiff was damaged by its believing, relying on, and being deceived by the representation.

*See Brzoska v. Olson*, 668 A.2d 1355, 1367 (Del. 1995).

A plaintiff's fraudulent misrepresentation claim will be dismissed unless the factual basis

for the alleged fraud is stated with particularity. Fed. R. Civ. P. 9(b) ("In all averments of fraud .

. . the circumstances constituting fraud . . . shall be stated with particularity. Malice, intent,

knowledge, and other condition of mind of a person may be averred generally.").

15

Count II of the complaint contains similar allegations under the guise of a claim for "negligent misrepresentation." A claim of negligent misrepresentation requires all elements of a claim for fraudulent misrepresentation, except "the plaintiff need not plead that the defendant knew or believed that his or her statement was false or that he or she proceeded in a reckless disregard for the truth." *See Student Fin. Corp. v. Royal Indem. Co.*, C.A. No. 03-507 JJF, 2004 U.S. Dist. LEXIS 4952, at *10 (D. Del. Mar. 23, 2004). Claims for negligent misrepresentation are also subject to Rule 9(b). *Id.* at *8-9 (dismissing negligent misrepresentation claim for failure to satisfy the pleading requirements of Rule 9(b)).

### A. Kayne Does Not Plead With Particularity Any Allegations About Who Made The Allegedly False Statements, Who Heard Those Statements, Or When Those Statements Were Allegedly Made.

"The purpose of Rule 9(b) is to provide notice of the 'precise misconduct' with which defendants are charged and to prevent false or unsubstantiated charges." *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998) (affirming dismissal because the complaint failed to identify the particular person "who made the presentation, when it took place, or with reference to what property it was made," notwithstanding general allegations that defendants and their agents had made the allegedly fraudulent statements). This heightened pleading standard "serves to give defendants notice of the claims against them, provide an increased measure of protection for their reputations, and reduce the number of frivolous suits brought solely to extract settlements." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 270 (3d Cir. 2006) (citation omitted).[8] *See also Toner v. Allstate Ins. Co.*, 821 F. Supp. 276, 284

---

[8]   Protection of defendants from unfounded claims brought solely to extract settlements is not an abstract concern. For example, many directors' and officers' insurance policies exclude coverage for claims based on fraud or misrepresentation, and permitting unfounded fraud or misrepresentation claims to proceed can significantly impact the rights of defending parties.

16

(D. Del. 1993) (noting that Rule 9(b) additionally serves to "prevent[] fraud actions in which all the facts are learned after the complaint is filed by way of the discovery process").

To meet the "stringent pleading restrictions of Rule 9(b)," a plaintiff must allege "the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 199 (3d Cir. 2007). Notably, the pleading requirements of Rule 9(b) are intended to be much more rigorous than the notice pleading standard under Rule 8(a), articulated in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true . . . ."). *See, e.g., Smiley v. Chrysler*, C.A. No. 07-05-SLR, 2008 U.S. Dist. LEXIS 14124, at *5-7 (D. Del. Feb. 21, 2008) (dismissing defamation claim under the Rule 8(a) standard articulated in *Twombly* where *pro se* plaintiff did not describe the allegedly defamatory statements or identify to whom those statements were made).

The allegations of fraud contained in the complaint fall far short of Rule 9(b)'s requirements, despite Kayne's extensive due diligence, knowledge of the telemarketing practices of its investment, and its status as a sophisticated investor (LLC Agreement, §4.2.2) First, the complaint fails to allege with particularity which defendant made each of the allegedly false statements upon which the complaint relies. The Third Circuit has made it clear that "[w]hen multiple defendants are involved, the complaint must plead with particularity by specifying the allegations of fraud applying to each defendant." *MDNet, Inc. v. Pharmacia Corp.*, 147 Fed.

17

Appx. 239, 245 (3d Cir. 2005) (affirming dismissal under Rule 9(b) where plaintiff failed to specify which defendant made the allegedly fraudulent statement).

In contrast, Kayne only makes the general allegation that:

> From November 2006 through March 2007, each of the Defendants repeatedly misrepresented or omitted material facts to the Plaintiff regarding how they operated the [Operating Businesses] by repeatedly promising and assuring the Plaintiff that they were not under investigation by the FTC, and that the Defendants operated the [Operating Businesses] lawfully in compliance with the FTCA and FTC regulations.

(Complaint, ¶¶ 33, 42).[9] Rule 9(b) requires much more detail, however. Thus, the Court of Appeals in *Klein v. General Nutrition Cos.*, 186 F.3d 338 (3d Cir. 1999), affirmed the dismissal of a claim sounding in fraud based only on allegations that the allegedly fraudulent statements were made by "company management" because the "the complaint fails to attribute the statement to any specific member of [company] management." *Id.* at 345.[10]

---

[9]   The only additional information Kayne provides about the allegedly false statements is the following:

> Throughout the course of Negotiations, the Defendants consistently and repeatedly represented to Plaintiff that their Telemarketing Companies: were known for following "the best practices in the industry;" had been inspected by the Office of the Attorney General of the State of Florida, who advised that it "had never seen a telemarketing company run better;" had been monitored by Citibank for years and were about to be "approved" by Citibank into a select group of telemarketing vendors; and, had telemarketing equipment and software sufficient to comply with all FTC rules and regulations."

(Complaint, ¶ 15). None of these allegations gives any information about who made such statements, to whom, or when, as Rule 9(b) requires.

[10]   The *Klein* court dismissed the fraud allegations on this ground even though the complaint had alleged the day on which the allegedly fraudulent statements were made. *Id.* Here, of course, Kayne made no allegation as to the time the allegedly fraudulent statements were made, other than to state that they were made some time during a five month window.

18

Likewise, the Court of Appeals in *Saporito v. Combustion Eng'g*, 843 F.2d 666 (3d Cir. 1988), affirmed a decision which had found Rule 9(b) unsatisfied because the complaint did not "indicate who the speakers were." *Id.* at 675. In *Saporito*, the complaint alleged only that "defendants and/or persons acting under their direction and control" had made the allegedly false statements. *Id.* The allegations of Kayne's complaint are the same – it merely accuses "the Defendants" of making the allegedly false statements. *See also Baker v. MBNA Corp.*, C.A. No. 05-272 (GMS), 2007 U.S. Dist. LEXIS 48892, at *20 (D. Del. July 6, 2007) (dismissing complaint as to some defendants because "blanket allegations against 'the defendants' and 'management' do not meet the particularity requirements of Rule 9(b) . . . ."); *Student Fin. Corp.*, 2004 U.S. Dist. LEXIS 4952, at *7 (granting motion to dismiss where complaint failed to allege who specifically made misrepresentative statements).

Second, the complaint fails to allege with particularity who heard the allegedly false statements. Rather, the complaint alleges only that these statements were made to the "Plaintiff." (Complaint, ¶¶ 15, 16, 33, 42). The Third Circuit has indicated that allegations as vague as these are also insufficient under Rule 9(b).

For example, in *Saporito*, the Court of Appeals based its affirmance of the trial court's dismissal on the fact that the plaintiff failed to allege "who received the information." *Saporito*, 843 F.2d at 675. In *Saporito*, the inadequate complaint had alleged only that "certain C-E employees other than plaintiffs" had heard the statements at issue. *Id.* Here, the complaint identifies no person who heard the alleged statements and provides no details other than identifying the "Plaintiff." *See also Rolo*, 155 F.3d at 659 ("Under Rule 9(b), failure to plead fraud with particularity with respect to what happened to a specific plaintiff prevents the defendants from being able to prepare a defense as to this particular allegation of fraud.").

19

Third, the complaint fails to allege with particularity when the allegedly false statements were made. Kayne merely indicates that the allegedly fraudulent statements were made at some time during the Purchase Agreement negotiations, a window of time that spans months. (Complaint, ¶¶ 14, 15, 33). This kind of unspecified timeframe is insufficient under Rule 9(b). *McCracken v. Raghbir*, C.A. No. 02-1482 JJF, 2004 U.S. Dist. LEXIS 20819, at *7 (D. Del. Oct. 7, 2004) (granting motion to dismiss where complaint failed to allege, *inter alia*, the time of the alleged misrepresentation); *see also Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (affirming district court's dismissal of fraudulent misrepresentation claim because allegation that misrepresentations made over a two to three year period failed to "alert the defendants to a sufficiently precise time frame to satisfy Rule 9(b)."); *In re: Newbridge Networks Sec. Litig.*, 962 F. Supp. 166, 175 (D.D.C. 1997) ("Alleging a time frame of several months, which is all plaintiffs have done . . . does not satisfy Rule 9(b)."); *Skylon Corp. v. Guilford Mills, Inc.*, 93 Civ. 5581 (LAP), 1997 U.S. Dist. LEXIS 2104, at *6 (S.D.N.Y. Mar. 3, 1997) (alleging four month period for alleged misrepresentations during business negotiations insufficient to meet Rule 9(b) where plaintiff allegedly heard the statements); *Sendar Co. v. Megaware Inc.*, 705 F. Supp. 159, 161 (S.D.N.Y. 1989) (holding that allegations of misrepresentations made during two month contract negotiation period failed to satisfy Rule 9(b)).

Fourth, neither Count I nor Count II identifies the content of the allegedly fraudulent statements with the required particularity. Counts I and II describe only two allegedly fraudulent statements – "that [the Operating Businesses] were not under investigation by the FTC" and that

"the Defendants operated the [Operating Businesses] lawfully in compliance with the FTCA and

FTC regulations" (Complaint, ¶¶ 33, 42) – and includes no other details.[11]

The Court of Appeals has affirmed the dismissal of claims alleged with much greater

particularity than that included in Kayne's complaint. For example, in *Lum*, 361 F.3d at 221, the

plaintiff alleged that the defendants had:

> artificially inflate[d] the "prime rate" published in the outside
> indexes by falsely reporting the Bank's individual prime rates to
> the various publications. To effectuate this scheme, the Banks
> reported as their prime rates, rates far in excess of the rates the
> Banks actually charged to their largest and most creditworthy
> customers.

*Id.* According to the court, these allegations failed "because they do not identify particular

fraudulent financial transactions." *Id.* at 224. Likewise, here, the complaint fails to identify any

particular fraudulent statements made by Defendants about how the Operating Businesses

actually did operate.

**B.    Kayne Fails To Plead Falsity In Compliance With The Rules.**

Counts I and II should also be dismissed because many of Kayne's allegations – while

artfully plead to hide this reality – are impermissibly made "on information and belief."

Allegations describing the allegedly fraudulent statements must be made with particularity. *See*

*id.* at 221. Because these allegations must be made with particularity, "'circumstances that

constitute the . . . elements [of fraud], if alleged on information and belief, generally will not

---

[11]    The allegations of paragraph 15 of the complaint are not representations that the
Company was in compliance with the FTCA and FTC regulations. The only part of
paragraph 15 that even arguably relates to the subject is the allegation that the Company
"had telemarketing equipment and software sufficient to comply with all FTC rules and
regulations." It is difficult to believe that a sophisticated investor such as Kayne
interpreted a statement (assuming *arguendo* that such a statement was actually made)
about the Operating Businesses' equipment to mean that the Operating Businesses were
compliant with all applicable laws.

21

satisfy Rule 9(b)'s particularity requirement.'" *Toner,* 821 F. Supp. at 285. *See also Brug v. Enstar Group, Inc.,* 755 F. Supp. 1247, 1253 (D. Del. 1991) ("Generally, Rule 9(b) does not permit the circumstances of fraud to be alleged solely on information and belief."); 2 *Moore's Federal Practice,* § 9.03[1][g] at 9-25 ("Pleadings alleging fraud usually may not be based on information and belief.").

The complaint alleges in paragraphs 2, 33, 34, 42, and 43 that Defendants represented that they and the Operating Businesses were not the subject of any investigation by the FTC. In paragraphs 24 and 25, however, Kayne concedes that it can only allege the (supposedly) fraudulent nature of these statements on information and belief:

> 24.    *Upon information and belief,* prior to March 31, 2007, the FTC was in fact engaged in an active investigation of Defendants . . . ."

(Complaint, ¶ 24) (emphasis added).  All of the complaint's allegations on this point are therefore insufficient as a matter of law because allegations made "on information and belief" are not sufficiently particular under Rule 9(b).

The complaint is equally unable to plead falsity of its other "claims." This becomes clear in paragraphs 17, 34, 43, and 52, where Kayne only conditionally alleges the falsity of the statements defendants allegedly made:

> 17.    *If the allegations in the FTC Suit are correct,* all of the foregoing promises, representations and warranties were materially false, intentionally misleading, and known to be such by the Defendants at the time they were made.

> 34.    . . . *if the allegations in the FTC Complaint are true,* their promises, representations, and warranties that their operations were lawful also were false.

> 43.    . . . *if the allegations in the FTC Complaint are true,* their promises, representations, and warranties that their operations were lawful also were false.

22

> 52.    ... *if the FTC's allegations are proven true*, the
> Defendants breached their promises, representations, and
> warranties ... that they were operating the [Operating Businesses]
> in compliance with the law.

(emphasis added).  While these allegations do not use the exact words "information and belief,"

they are equally contingent and tentative.  If Kayne cannot allege, without hedging, that the

statements allegedly made by Defendants are false, Kayne should not be permitted to ground a

claim for fraud upon such statements.  To permit such pleading would eviscerate the benefits of

Rule 9(b).  *In re Suprema Specialties,*  438 F.3d at 270 (3d Cir. 2006) (explaining that Rule 9(b)

is intended to "provide an increased measure of protection for [defendants'] reputations, and

reduce the number of frivolous suits brought solely to extract settlements") (internal citation

omitted).

## IV.    THE PURCHASE AGREEMENT BARS KAYNE'S BREACH OF CONTRACTUAL REPRESENTATIONS AND WARRANTIES CLAIM AS A MATTER OF LAW.

Section 8.3, titled "Conditions to and Limitations on Indemnification," states in relevant

part:

> ... Notwithstanding anything herein to the contrary, a Purchaser
> Indemnitee shall not be entitled to make a claim for
> indemnification under a "diminution in value" theory pursuant to
> Sections 8.2(a), (b) or (f) unless the Losses that are the subject of
> such claim result in (a) **an actual loss of any portion of the**
> **Original Issue Price** (as such term is defined in the Restated LLC
> Agreement) to the Purchaser, or (b) a material change in the
> condition (financial or otherwise) or results of operations of the
> Company, the Operating Subsidiaries or the Business such that the
> Company, Operating Subsidiaries or Business **will not be able to**
> **meet its obligations under this Purchase Agreement or the**
> **Restated LLC Agreement** executed even herewith.

(Purchase Agreement, §8.3) (bolding added).

As set forth below, Section 8.3 clearly and unambiguously requires that Kayne either suffer an "actual loss," or that the Company or the Operating Businesses be unable to meet their obligations under the Purchase Agreement or the LLC Agreement, <u>before</u> Kayne may bring a claim for breach of contractual representations and warranties. Because Kayne fails to allege the satisfaction of this condition precedent, Kayne cannot prevail as matter of law on Count III, and the Court should dismiss this claim under Rule 12(b)(6). *See, e.g., Atkinson v. Lafayette College*, 460 F.3d 447, 452-53 (3d Cir. 2006) (affirming district court's dismissal of contract claim under Rule 12(b)(6) where clear and unambiguous contract language indicated that plaintiff was not a tenured professor); *Eames v. Nationwide Mut. Ins. Co.*, 412 F. Supp. 2d 431, 435 (D. Del. 2006) (dismissing claim under Rule 12(b)(6) where insurance contract clearly and unambiguously provided applicable policy limits); *Cincinnati SMSA Ltd. P'Ship v. Cincinnati Bell Cellular Sys. Co.*, 708 A.2d 989, 994 (Del. 1998) (affirming grant of motion to dismiss based on unambiguous provision of a partnership agreement).

### A.    Section 8.3 Of The Purchase Agreement Clearly And Unambiguously Applies To Count III Of The Complaint.

"Under Delaware law, the interpretation of contract language is a question of law." *GB Biosciences Corp. v. Ishihara Sangyo Kaisha Ltd.*, 270 F. Supp. 2d 476, 481 (D. Del. 2003). If contract language is clear and unambiguous, discovery is irrelevant because the language of the contract document controls. *E.I. DuPont de Nemours & Co. v. Allstate Ins. Co.*, 693 A.2d 1059, 1061 (Del. 1997) (holding that it is improper to consider evidence outside the four corners of the parties' agreement where that agreement is clear and unambiguous).

Contract language is:

> ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings.

24

*Northwestern Nat'l Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 43 (Del. 1996). "Unambiguous

contract language must be construed in accordance with how it would be understood by 'an

objective reasonable third party.'" *GB Biosciences*, 270 F. Supp. at 481.

Section 8.3 clearly and unambiguously applies to Kayne's breach of contractual represen-

tation and warranty claim. <u>First</u>, the parties agreed that claims for breach of representations and

warranties are to be treated as indemnity claims. (*See* Purchase Agreement, §8.2) ("Sellers

[including Defendants] agree, jointly and severally, to indemnify and hold harmless the

Purchaser [Kayne] . . . from and against . . . Losses . . . which may be incurred . . . relating to,

based upon, resulting from or arising out of the breach of any representation or warranty . . . ."").

There should be no dispute that Count III of the complaint is based solely upon the alleged

breach of representations and warranties in the Purchase Agreement. (Complaint, ¶51).

<u>Second</u>, objective, reasonable business people know and understand that the standard

measure of damages for breach of a contractual representation or warranty is the diminution in

value from the value of the property as represented in the contract. *See, e.g., Interim Healthcare,*

*Inc. v. Spherion Corp.*, C.A. No. 18977 NC, 2003 Del. Ch. LEXIS 130, at *24 (Del. Ch. Nov. 19,

2003) (noting that damages for breach of contractual representation and warranty "include the

difference between the purchase price and the actual value of Interim at the time of the sale");

*Sullivan v. Thrifty, Inc.*, C.A. No. 82-C-803-B, 1983 U.S. Dist. LEXIS 11181, at *35 (N.D. Okla.

Dec. 2, 1983) (holding that the measure of damages for breach of representations and warranties

is "the difference in the value of the stock as represented and its actual value"); *see generally*

*McLachlan v. Wilmington Dry Goods Co.*, 22 A.2d 851, 853-54 (Del. 1941) ("The usual

damages recoverable for the breach of warranty of quality or fitness is the difference between the

actual value of the goods bought and their value if they had been as warranted."); *Mathews v.*

25

*Kidder, Peabody & Co.*, 260 F.3d 239, 247 (3d Cir. 2001) ("The Appellants' damages, at the time they invested, were simply the difference between the approximate value of the Funds, calculated based upon market information free of Kidder's misrepresentations, and the actual purchase price.").

Third, in keeping with the common understanding of damages for breach of contractual representations and warranties, the complaint alleges in paragraph 53 that "Defendants have severely damaged the telemarketing businesses by causing the loss of customers, and impairing goodwill and business reputations," suggesting only that Kayne's investment has diminished in value from the time of the closing. Kayne also states in paragraph 53 of the complaint that it has lost its total investment in the business, again a diminution in value theory. Kayne has not alleged that it has lost any profits as of today; in fact, Kayne's prayer for relief seeks only profits Kayne might lose in the future.

Finally, it is of course the case that special damages may at times accrue for a breach of contractual representation or warranty. Under Federal Rule of Civil Procedure 9(g), however, Kayne must specifically plead those damages. Fed. R. Civ. P. 9(g) ("If an item of special damage is claimed, it must be specifically stated."). Kayne utterly fails to make any such allegation.

Because Kayne has alleged damages under only a diminution in value theory, Kayne's breach of contract claim is governed by the provisions of Section 8.3 of the Purchase Agreement.

**B.    Kayne Has Not Alleged The Existence Of Either Condition Precedent Necessary To Seek Diminution In Value Damages For Alleged Breach Of Representations And Warranties.**

Section 8.3 of the Purchase Agreement sets the conditions precedent for bringing Kayne's breach of contractual representations and warranties claim:

26

(a) **an actual loss of any portion of the Original Issue Price** (as such term is defined in the Restated LLC Agreement) to the Purchaser, or (b) a material change in the condition (financial or otherwise) or results of operations of the Company, the Operating Subsidiaries or the Business such that the Company, Operating Subsidiaries or Business **will not be able to meet its obligations under this Purchase Agreement or the Restated LLC Agreement** executed even herewith.

(Purchase Agreement, §8.3) (bolding added).

The complaint does not make allegations sufficient to satisfy either of these two conditions. Kayne does not allege that it has incurred an "actual loss of any portion of the Original Issue Price" that Kayne paid for its ownership interest in the Company, as required by Section 8.3(a). In fact, it is inconceivable that Kayne could suffer an "actual" loss until it actually sells or transfers its ownership interest. Kayne has not alleged any such sale or transfer, nor could Kayne make any such allegation, because Kayne in fact still owns the Series A Units it received for its investment.

Kayne does allege in paragraph 53 of the complaint that "[t]he Defendants' conduct further caused the Plaintiff to lose its total investment in the businesses." Such a statement is a classic example of the type of "artful pleading" that cannot withstand a motion to dismiss. *Griffin Corporate Servs., LLC v. Jacobs*, C.A. No. 396-N, 2005 Del. Ch. LEXIS 120, at *16-17 (Del. Ch. Aug. 11, 2005) (allegation that "as a result of Entity's intentional interference with existing and prospective business relationships, Defendants have been damaged" characterized as conclusory and insufficient to support claim for breach of contract). *See generally Gen. Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 333 (3d Cir. 2001) (affirming the district court's dismissal of claim for breach of implied covenant based on conclusory legal allegations); *Solomon v. Guardian Life Ins. Co., C.A. No. 96-1597,* 1996 U.S. Dist. LEXIS 18342, at *12-13 (E.D. Pa. Dec. 11, 1996) (acknowledging the liberal pleading standards of the

27

Federal Rules of Civil Procedure and dismissing plaintiff's claim of irreparable financial damage, without supportive facts, as a conclusory and insufficient to support a cause of action).

Indeed, while Kayne need not make a detailed statement of its "actual loss[es]," it is required "to provide the 'grounds'" for its assertion that it has suffered a loss of its investment. *Twombly*, 127 S.Ct. at 1965 n.3. *See also id.* ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); 5 Wright & Miller, *Federal Practice and Procedure* § 1202, at 94, 95 (3d ed. 2004) (explaining that Rule 8(a) "contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented" and does not authorize a pleader's "bare averment that he wants relief and is entitled to it."). The complaint fails to make this showing.

The complaint also does not satisfy the requirements of Section 8.3(b) of the Purchase Agreement. Kayne nowhere alleges that the Company has not or cannot "meet its obligations under this Purchase Agreement or the Restated LLC Agreement." Indeed, the Company has no obligations under the Purchase Agreement or the LLC Agreement that have not been satisfied. In fact, the first time that the Company could arguably have any obligation to Kayne is on March 31, 2012, when Kayne could elect to redeem its Series A Units. (LLC Agreement §3.4.3(c), §3.4.6).

Because the breach of contractual representations and warranties claim that Kayne has alleged is prohibited by Section 8.3 of the Purchase Agreement, it should be dismissed.

28

## CONCLUSION

For the reasons set out more fully herein, Defendants respectfully request the Court to stay or dismiss this action.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_John W. Shaw_

John W. Shaw (No. 3312 )
Michele Sherretta Budicak (No. 4651)
James L. Higgins (No. 5021)
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com
mbudicak@ycst.com
jhiggins@ycst.com

*Attorneys for Defendants Roy Eliasson, Bryon Wolf, and Alfred Wolf*

Dated:  April 2, 2008

DB02:6685018.12                                        067235.1001

## CERTIFICATE OF SERVICE

I, John W. Shaw, Esquire, hereby certify that on April 2, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> John C. Phillips, Jr., Esquire
> Phillips Goldman & Spence, P.A.
> 1200 North Broom Street
> Wilmington, DE 19806

I further certify that on April 2, 2008, I caused a true and correct copy of the foregoing document to be served by e-mail and hand delivery on the above-listed counsel of record.

> YOUNG CONAWAY STARGATT
> & TAYLOR, LLP
>
> John W. Shaw (No. 3362)
> jshaw@ycst.com
> Michele Sherretta Budicak (No. 4651)
> mbudicak@ycst.com
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware 19899
> (302) 571-6600