IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

KAYNE SUNSTATE INVESTORS, LLC,    )
                                  )
            Plaintiff,            )
                                  )
      v.                          )        C.A. No. 08-141-SLR
                                  )
ROY ELIASSON, BRYON WOLF, and     )
ALFRED WOLF,                      )
                                  )
            Defendants.           )
                                  )

## DEFENDANTS' ANSWERING BRIEF
## IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

John W. Shaw (No. 3362)
Michele Sherretta Budicak (No. 4651)
James L. Higgins (No. 5021)
YOUNG CONAWAY STARGATT
      & TAYLOR, LLP
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

*Attorneys for Defendants Roy Eliasson,
Bryon Wolf, and Alfred Wolf*

Dated: April 24, 2008

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ iii

NATURE AND STAGE OF THE PROCEEDINGS ............................................................. 1

SUMMARY OF ARGUMENT ........................................................................................ 2

STATEMENT OF FACTS ............................................................................................... 3

      A.     Facts That Establish The Existence Of Federal Subject
              Matter Jurisdiction under 28 U.S.C. § 1332(a) ................................................. 3

      B.     Negotiation Of The Parties' Contract And The
              Relevant Contract Provisions ....................................................................... 3

      C.     Defendants Vigorously Contest Kayne's Claims
              Of Fraud And Breach Of Contract ................................................................ 3

ARGUMENT

      I.      KAYNE WRONGLY ASSERTS THAT DEFENDANTS
              BEAR THE BURDEN OF PERSUASION ON THIS
              MOTION ...................................................................................................... 5

      II.     KAYNE WRONGLY ASSERTS THAT KAYNE'S
              REMOVAL RIGHTS SHOULD BE NARROWLY
              CONSTRUED ................................................................................................ 6

      III.    KAYNE IS INVITING ERROR BY FAILING TO
              ADDRESS HOW REASONABLE PEOPLE IN THE
              POSITION OF THE CONTRACTING PARTIES WOULD
              UNDERSTAND THE PARTIES' JURISDICTION
              CLAUSE ....................................................................................................... 7

            A.     The Plain Language Of The Parties' Contract
                    Does Not Reflect Any Understanding That The
                    "Jurisdiction Clause" Was Intended To Impact
                    Either Party's Removal Rights, Let Alone Give
                    The Other Party A Right To Lock-In The Venue
                    For Dispute Resolution. ........................................................................ 7

B.  Kayne's Interpretation Of The "Jurisdiction Clause" Will Upset Commercial Expectations Formed Under Many Commercial Agreements Containing Nearly Identical Language And Structure.................................................................................15

C.  The Decisions Kayne Relies On Do Not Reflect Delaware Law And Are Not Controlling In This Dispute..............................................................................17

CONCLUSION ....................................................................................................20

DB02:6768933.1                                      067235.1001

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Atwell v. RHIS, Inc.,*
  C.A. No. 02C-12-003WLW, 2006 Del. Super. LEXIS 425
  (Del. Super. Ct. Aug. 18, 2006) .................................................................................... 14

*Active Asset Recovery, Inc. v. Real Estate Asset Recovery Servs., Inc.,*
  C.A. No. 15478, 1999 Del. Ch. LEXIS 179
  (Del. Ch. Sept. 10, 1999) ............................................................................................ 12

*American Seed Co., Inc. v. Monsanto Co.,*
  C.A. No. 05-535-SLR (D. Del. Dec. 5, 2005) .................................................... 16, 17

*In re Appraisal of Ford Holdings,*
  698 A.2d 973 (Del. Ch. 1997) ...................................................................................... 11

*Ariel Land Owners, Inc. v. Dring,*
  351 F.3d 611 (3d Cir. 2003) ........................................................................................... 5

*Cannon v. Stephens,*
  159 A. 234 (Del. Ch. 1932) ........................................................................................... 11

*Cantor Fitzgerald v. Cantor,*
  724 A.2d 571 (Del. Ch. 1998) ...................................................................................... 10

*Citimortgage, Inc. v. Loan Link Financial Services,*
  No. 4:07-CV-1989-SNL, 2008 U.S. Dist. LEXIS 19259
  (E.D. Ill. Mar. 12, 2008) ............................................................................................... 18

*Commerce Nat'l Ins. Servs. v. Buchler,*
  C.A. No. 02-037-SLR, 2003 U.S. Dist. LEXIS 22429
  (D. Del. Dec. 10, 2003) ................................................................................................... 7

*Connecticut Bank of Commerce v. Republic of Congo,*
  440 F. Supp. 2d 346 (D. Del. 2006) ............................................................................. 18

*E.I. DuPont de Nemours & Co. v. Allstate Ins. Co.,*
  693 A.2d 1059 (Del. 1997) .............................................................................................. 7

*Ferrari, Alvarez, Olsen & Ottoboni v. Home Ins. Co.,*
  940 F.2d 550 (9th Cir. 1991) ....................................................................................... 5, 9

DB02:6768933.1

067235.1001

*Foster v. Chesapeake Insurance Co.,*
    933 F.2d 1207 (3d Cir. 1991) ..............................................................5, 9, 10

*GB Biosciences Corp. v. Ishihara Sangyo Kaisha Ltd.,*
    270 F. Supp. 2d 476 (D. Del. 2003) ..........................................................7

*Global Satellite Communications Co. v. Starmill U.K. Ltd.,*
    378 F.3d 1269 (11th Cir. 2004) ...............................................................12

*iNet Directories, LLC v. Developershed, Inc.,*
    394 F.3d 1081 (8th Cir. 2005) .................................................................18

*Kronenberg v. Katz,*
    872 A.2d 568 (Del. Ch. 2004), *aff'd,*
    No. 390, 2004, 2005 Del. LEXIS 65 (Del. Feb. 7, 2005)............................16

*Mark Fox Group, Inc. v. E.I. DuPont de Nemours & Co.,*
    2003 Del. Ch. LEXIS 71
    (Del. Ch. July 2, 2003) ..........................................................................14

*Newman/Haas Racing v. Unelko Corp.,*
    813 F. Supp. 1345 (N.D. Ill. 1993).....................................................13, 17

*Periodical Graphics, Inc. v. Spitz,*
    C.A. No. 94-3286, 1994 U.S. Dist. LEXIS 12971
    (E.D. Pa. Sept. 14, 1994) ......................................................................10

*In re Real Estate of Jamie's L.L.C.,*
    2006 Del. Ch. LEXIS 50 (Del. Ch. Mar. 1, 2006).......................................11

*Sanderson, Thompson, Ratledge & Zimny v. AWACS, Inc.,*
    958 F. Supp. 947 (D. Del. 1997) ...............................................................6

*Spenlinhauer v. R.R. Donnelly & Sons Co.,*
    534 F. Supp. 2d 162 (D. Me. 2008)....................................................12, 13

*Thermtron Prods., Inc. v. Hermansdorfer,*
    423 U.S. 336 (1976) ..........................................................................6, 9, 11

*Wilson v. Republic Iron & Steel Co.,*
    257 U.S. 92 (1921) .................................................................................5

**Statutes**

28 U.S.C. § 1441 ...........................................................................................17

28 U.S.C. § 1332(a).........................................................................................5

DB02:6768933.1

067235.1001

10 *Del. C.* § 1902..................................................................................................14

**Other Authorities**

*Black's Law Dictionary* 1553 (7th ed. 1999)..........................................................9

4 Contemporary Corporation Forms ¶ 13.1.93 (2d ed. 2008) .........................................16

9 Jacob Rabkin and Mark H. Johnson,
    Current Legal Forms with Tax Analysis
    (LexisNexis 2007) ..........................................................................................16

Brad S. Karp, *The Litigation Angle in Drafting Commercial
    Agreements*, (Practicing Law Institute 2002) .......................................15, 16

Committee On Negotiated Acquisitions, Am. Bar
    Ass'n, Model Asset Purchase Agreement
    With Commentary (2001) .................................................................................15

Am. Bar Ass'n, Model Joint Venture Agreement
    With Commentary (2006) .................................................................................15

Committee on Negotiated Acquisitions, Am. Bar
    Ass'n, Model Stock Purchase Agreement
    With Commentary (1995) .................................................................................15

16 *Moore's Federal Practice* § 107.06 (2008)........................................................6

16 *Moore's Federal Practice*, § 107.18[1][a] (2008)..............................................6

Tina L. Stark ed., Negotiating and Drafting
    Contract Boilerplate (2003) ..........................................................................15

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Kayne Sunstate Investors, LLC ("Kayne") filed its complaint on February 8, 2008 and asserted three causes of action – fraudulent misrepresentation (Count I), negligent misrepresentation (Count II), and breach of contractual representations and warranties (Count III). Even though Kayne's cause of action for negligent misrepresentation fell within the exclusive subject matter jurisdiction of the Delaware Court of Chancery, Kayne chose to file its complaint in the Delaware Superior Court.

Defendants Roy Eliasson, Bryon Wolf, and Alfred Wolf (collectively "Defendants") filed a timely notice of removal on March 7, 2008, rather than seeking a transfer to the Court of Chancery. The removal petition states, and Kayne does not contest, that this Court has subject matter jurisdiction under 28 U.S.C. § 1332(a). On April 2, 2008, Defendants moved to stay or dismiss this action because the complaint violates a stay order in related litigation pending in the Middle District of Florida and because the complaint fails to plead either its fraud or contract claims in accordance with the Federal Rules of Civil Procedure.[1]

Kayne has now moved to remand, even though it should not have brought this case in the Superior Court in the first instance. Because Kayne's motion is baseless, Defendants hereby oppose Kayne's motion.

---

[1] Defendants also moved in the Middle District of Florida for an order staying this case and/or barring Kayne from pursuing this litigation while the Florida stay order is in force. *FTC v. FTN Promotions, Inc.*, C.A. No. 8:07-CV-1279-T-30TGW, D.I. 225 (M.D. Fla. Apr. 15, 2008).

## SUMMARY OF ARGUMENT

1.      Kayne has failed to identify any jurisdictional deficiency in its moving papers, and diversity jurisdiction exists – without question – over this matter.  Because the motion to remand is not based on a jurisdictional defect or a defect in Defendants' removal papers, Kayne bears the burden of persuasion on this motion, and all doubts are to be resolved against Kayne.

2.      Defendants do not contest that the forum provisions in the parties' contract are valid and enforceable.  Nothing in the structure or text of the parties' contract, however, demonstrates that any party waived its statutory right of removal or establishes that the person initiating litigation can choose and lock-in the forum.

3.      Similar, if not nearly identical, language is contained in the major transactional treatises, and none of these treatises even begins to suggest that the language Kayne relies upon is designed to waive removal rights.  Rather, these materials confirm that the purpose of the contract language at issue is to ensure that jurisdiction can be obtained in court systems the parties agree are mutually acceptable.

4.      Kayne cites no decisions decided under Delaware law, the law chosen by the parties to govern their agreement, that interprets similar contract language consistent with Kayne's position.  Moreover, the decisions Kayne does cite contain explicit language that demonstrates an agreement to waive removal rights.

## STATEMENT OF FACTS

A.    **Facts That Establish The Existence Of Federal Subject
      Matter Jurisdiction Under 28 U.S.C. § 1332(a).**

As alleged in the complaint, Kayne is a Delaware limited liability company with its

principal place of business in Los Angeles, California.  (Complaint ¶ 6). (D.I. 1 Exh A).

Defendants Roy Eliasson, Bryon Wolf, and Alfred Wolf are citizens of the State of Florida,

where they currently live with their families.  (*Id.* ¶¶ 7-9).  The amount in controversy exceeds

$75,000.  (*Id.* ¶¶ 40, 48, 54).

B.    **Negotiation Of The Parties' Contract And The Relevant Contract Provisions.**

Much as one might expect in connection with a $25 million investment, the parties'

transaction was highly negotiated, and the complete deal documentation totaled in the thousands

of pages.[2]  All parties were represented by counsel.  (Purchase Agreement §§6.2(h), 9.5 (Open-

ing Brief ("Op. Br.") Exh A) (D.I. 7)).  The negotiations were lengthy, occurring over the course

of nearly six months.  (Complaint ¶ 33).  The Purchase Agreement (including the provision at

issue here) is governed by Delaware law.  (*Id.* §9.2.).

Kayne's motion points to no explicit language in the many thousands of pages of these

highly negotiated transaction documents that supports its position.

C.    **Defendants Vigorously Contest Kayne's Claims Of Fraud And Breach Of Contract.**

Apart from the facts necessary to establish subject matter jurisdiction under 28 U.S.C.

§ 1332(a), the background of the dispute is not particularly relevant to this motion.  It is nonethe-

---

[2]    Kayne's motion to remand attaches the execution copy of the parties Interest Contribution
and Preferred Unit Purchase Agreement (the "Purchase Agreement"), but not any of the
related agreements (including the parties' Asset Contribution Agreements, the Bay Pines
Agreement, the Amended and Restated Operating Agreement of Sunstate Holdings, LLC,
and the Employment Agreements), or the exhibits and schedules to the Purchase Agreement
and related agreements.

3

less useful to know that Kayne conducted extensive due diligence before making its investment, and that Kayne received a voluminous due diligence report from Venable LLP that detailed the very business practices about which Kayne now complains.

Kayne went into this transaction with its eyes wide open, and when it becomes time to address the merits, Kayne's claims will fail.

067235.1001

# ARGUMENT[3]

## I.    KAYNE WRONGLY ASSERTS THAT DEFENDANTS BEAR THE BURDEN OF PERSUASION ON THIS MOTION.

Kayne's argument begins by asserting that Defendants have the "burden of proving that

jurisdiction exists." (Op. Br. at 6). Kayne is wrong.

First, a motion to remand based on an alleged contractual waiver of removal rights does

not present a jurisdictional issue. *Ariel Land Owners, Inc. v. Dring*, 351 F.3d 611, 614 (3d Cir.

2003) ("[A]n irregularity in removal of a case to federal court is to be considered 'jurisdictional'

only if the case could not initially have been filed in federal court."); *Foster v. Chesapeake*

*Insurance Co.*, 933 F.2d 1207, 1215-16 (3d Cir. 1991) (holding that remand based on contractual

waiver was not a jurisdictional issue).

Kayne could have filed this litigation in federal court under 28 U.S.C. § 1332(a), and

Kayne has not contested that subject matter jurisdiction exists under this statute. Because

Kayne's motion did not challenge Defendants' assertion of jurisdiction under 28 U.S.C.

§ 1332(a), no further proof or evidence of subject matter jurisdiction is required. *Wilson v.*

*Republic Iron & Steel Co.*, 257 U.S. 92, 97-98 (1921) ("[I]f the plaintiff does not take issue with

what is stated in the [removal] petition, he must be taken as assenting to its truth and the petition-

ing defendant need not produce any proof to sustain it.").

Second, because the question presented in this motion is not jurisdictional, Kayne – not

Defendants – bears the burden of persuasion to secure a remand. *Ferrari, Alvarez, Olsen &*

*Ottoboni v. Home Ins. Co.*, 940 F.2d 550, 554 (9th Cir. 1991) (explaining that the district court

---

[3]    Kayne's argument opens with several pages of discussion about whether Purchase Agreement §9.3(a) is valid and enforceable. Defendants do not contest the validity or enforceability of §9.3(a), and thus do not respond to this part of Kayne's argument. Defendants do dispute, however, Kayne's construction of §9.3(a) and Kayne's assertion that this motion is jurisdictional.

erred in remanding after improperly placing on defendant the burden of proving that the right of

removal was not waived); 16 *Moore's Federal Practice*, § 107.18[1][a] at 107-165 (Matthew

Bender 3d ed. 2008) ("The party alleging that the other party waived the right to remove by

agreement has the burden of proof on all material provisions of the agreement.").

## II.  KAYNE WRONGLY ASSERTS THAT KAYNE'S REMOVAL RIGHTS SHOULD BE NARROWLY CONSTRUED.

Kayne also claims that all doubts should be resolved against Defendants on this motion.

The decision Kayne quotes, however, does not deal with remand based on non-statutory or non-

jurisdictional grounds, but rather deals with construction of the removal statute itself. *See*

*Sanderson, Thompson, Ratledge & Zimny v. AWACS, Inc.*, 958 F. Supp. 947, 952 (D. Del. 1997).

The correct rule is that, while statutory removal requirements are strictly construed, a

district court usually lacks the authority to remand when the requirements of the removal statute

are satisfied. *See* 16 *Moore's Federal Practice* § 107.06 at 107-29 (Matthew Bender 3d ed.

2008) ("If the requirements of the removal statute are met, the right to remove is absolute.").

Thus, while it is possible to secure a remand based on a contractual waiver, those possibilities are

limited and should be uncommon. *See Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336

(1976) (reversing and vacating as abuse of discretion a remand order based on non-statutory

grounds).

Kayne has made no showing – and indeed there could be no showing – of any special

circumstances in this case justifying a remand.

DB02:6768933.1                                                                  067235.1001

### III.     KAYNE IS INVITING ERROR BY FAILING TO ADDRESS HOW REASONABLE PEOPLE IN THE POSITION OF THE CONTRACTING PARTIES WOULD UNDERSTAND THE PARTIES' JURISDICTION CLAUSE.

#### A.     The Plain Language Of The Parties' Contract Does Not Reflect Any Understanding That The "Jurisdiction Clause" Was Intended To Impact Either Party's Removal Rights, Let Alone Give The Other Party A Right To Lock-In The Venue For Dispute Resolution.

Kayne asserts that Purchase Agreement §9.3(a) (the "Jurisdiction Clause") should be construed "by applying general principles of contract interpretation" and that §9.3(a) should be construed in accordance with Delaware law.  (Op. Br. at 10).  We agree with these two points.

Contract interpretation under Delaware law (and generally) commences with an examination of the plain language of the contract.  *See Commerce Nat'l Ins. Servs. v. Buchler*, C.A. No. 02-037-SLR, 2003 U.S. Dist. LEXIS 22429, at *9 (D. Del. Dec. 10, 2003) (explaining that where the language of a contract is plain and clear on its face, the writing itself is the sole source for gaining an understanding of its intent) (citations omitted); *E.I. DuPont de Nemours & Co. v. Allstate Ins. Co.*, 693 A.2d 1059, 1061 (Del. 1997) (holding that it is improper to consider evidence outside the four corners of the parties' agreement where that agreement is clear and unambiguous).  "Unambiguous contract language must be construed in accordance with how it would be understood by 'an objective reasonable third party.'"  *GB Biosciences Corp. v. Ishihara Sangyo Kaisha Ltd.*, 270 F. Supp. 2d 476, 481 (D. Del. 2003).

Our analysis therefore starts with the text of the parties' actual agreement:

> 9.3     <u>Jurisdiction; Waiver of Jury Trial</u>.
>
> (a)     Any suit, action or proceeding seeking to enforce any provision of, or based on any dispute or matter arising out of or in connection with, this Agreement, the Related Documents or the transactions contemplated hereby or thereby, must be brought in the courts of the State of Delaware, in New Castle County, or the federal courts in the District of Delaware.  Each of the parties (a) consents to the exclusive jurisdiction of such courts (and of the appropriate appellate courts therefrom) in any such suit, action or

proceeding (b) irrevocably waives, to the fullest extent permitted
by Law, any objection which it may now or hereafter have to the
laying of venue of any such suit, action or proceeding which is
brought in any such court or that any such suit, action or proceed-
ing which is brought in any such court has been brought in an
inconvenient forum, (c) will not attempt to deny or defeat such per-
sonal jurisdiction by motion or other request for leave from any
such court, (d) will not bring any action relating to this agreement,
the Related Documents or any of the transactions contemplated
hereby or thereby in any other court, and (e) to the fullest extent
permitted by Law, voluntarily, knowingly, irrevocably and uncon-
ditionally waive any right to have a jury participate in the resolu-
tion of any such dispute or matter.  Process in any such suit, action
or proceeding may be served on any party anywhere in the world,
whether within or without the jurisdiction of any such court. . . .

Purchase Agreement §9.3(a).

The plain language of the parties' Jurisdiction Clause demonstrates why Kayne's motion

is wrong in at least 7 different ways.  First, the plain language of §9.3(a) demonstrates that the

Jurisdiction Clause was drafted to facilitate the parties' agreement to litigate within Delaware,

but not to give the party filing suit the right to lock litigation into the state court system.  For

example, the Jurisdiction Clause expressly permits litigation to be initiated in any trial court in

Delaware, whether state or federal.[4]  The consent to jurisdiction language in subparagraph (a) is

not limited to any particular court or to just the court initially selected by the plaintiff in a dis-

pute.  Rather, this language ("consents to the exclusive jurisdiction of such courts") encompasses

all possible Delaware court systems.

The venue language in subparagraph (b) likewise is designed to facilitate dispute resolu-

tion in Delaware but does not on its face impact removal rights.  Subparagraph (b) has two parts,

a waiver of venue objections in the courts listed above and a waiver of claims that such courts

---

[4]    Kayne's brief in several places misquotes the Jurisdiction Clause and asserts that the parties
limited the available state fora only to the Delaware Superior Court.  See, e.g., Op. Br. at 10.
An examination of the Purchase Agreement makes plain that this assertion is wrong.

8

are in an "inconvenient forum." "Venue" is commonly understood to mean "[t]he proper or possible place for the trial of a lawsuit," *Black's Law Dictionary* 1553 (7th ed. 1999), and in common parlance does not encompass "removal rights" within its definition. Indeed, discussions of removal rights are rarely, if ever, cast in terms of "venue" or objections thereto. *See, e.g., Thermtron*, 423 U.S. 336, 342-44. Subsection (b) can be read to include removal rights only by implying a meaning that goes beyond the actual words selected by the parties. *Cf. Ferrari*, 940 F.2d at 554 (reversing remand order based on an implied meaning not apparent from language found in the agreement) (noting that reliance on implied meaning improperly placed burden of proof on party opposing remand).

Another way to examine how the language of §9.3(a) permits litigation in any Delaware trial court is to contrast it with *Foster v. Chesapeake Insurance Co.*, the only Third Circuit case on this subject in Kayne's brief. *Foster* relied on language that is quite different that the language of §9.3(a). For example, in *Foster* the parties had agreed "to submit to any court of competent jurisdiction at the request of the [plaintiff], and to comply with all requirements necessary to give such court jurisdiction." *Foster*, 933 F.2d at 1216-17 (emphasis in original) (internal quotation marks omitted). The court viewed this language as suggestive of a waiver of removal rights because the language requires defendants to "submit" to the court "at the request" of the plaintiff and to comply with the requirements of that one, particular court. Section 9.3(a), in contrast, contains nothing similar.

Likewise, the *Foster* provision stated that any litigation "shall be determined in accordance with the law and practice of such court." *Id.* at 1216. The Court viewed this language to further evidence the parties' agreement to remain in the state court chosen by the plaintiff because the "practices" of the state court would not by employed in the federal system. *Id.* at

1217. None of the language used to establish contractual meaning in *Foster* exists here, let alone the combination of textual elements that formed the core of the *Foster* holding.[5]

    Second, consistent with text that facilitates dispute resolution in any Delaware trial court, §9.3(a) is titled "Jurisdiction; Waiver of Jury Trial." Establishing jurisdiction in Delaware courts and waiving jury trial rights are the only two things that the plain language of §9.3(a) accomplishes. Section 9.3(a) establishes that any disputes between the contracting parties can be heard exclusively in the state and federal courts of the state of Delaware and ensures that all parties are subject to personal jurisdiction in Delaware. Sections 9.3(a)(e) and 9.3(b) treat jury trial waivers. It is unlikely that objective reasonable business people would take the time to match the title of §9.3 to its contents in all respects except one, waiver of the right of removal. *See Cantor Fitzgerald v. Cantor*, 724 A.2d 571, 581 n. 35 (Del. Ch. 1998) ("Although contract headings are not controlling evidence of the meaning of a contract's substantive provisions, they may be considered as additional evidence tending to support the substantive provisions.").

    Third, it is well established under Delaware law that parties may contract out of statutory rights, but to do so contracting parties must use "clear affirmative words or actions." *In re*

---

[5]   At least one district court in this circuit has further discounted the persuasive value of *Foster* because *Foster* involved a reinsurance contract, and the court relied solely on other reinsurance contract cases to support its holding. *See Periodical Graphics, Inc. v. Spitz*, C.A. No. 94-3286, 1994 U.S. Dist. LEXIS 12971, at *5 (E.D. Pa. Sept. 14, 1994). The clause in *Spitz* was contained in an employment agreement, and was essentially identical to the clause here:

> the Employee hereby waives, to the fullest extent permitted by law, any objection that he may now or hereafter have to such jurisdiction or to the laying of the venue of any such suit, action or proceeding brought in such a court and any claim that such suit, action or proceeding has been brought in an inconvenient forum.

*Id.*, at *2-3. The district court rejected the argument that *Foster* controlled and denied the motion to remand, explaining that the clause was only "an agreement to certain geographical locations for the convenience of the parties rather than a waiver of the defendant's right to removal." *Id.* at *8.

    

*Appraisal of Ford Holdings*, 698 A.2d 973, 979 (Del. Ch. 1997) (corporate appraisal rights); *In re Real Estate of Jamie's L.L.C.*, 2006 Del. Ch. LEXIS 50, at *9 (Del. Ch. Mar. 1, 2006) (same) (real property statutory partition rights). Removal is a statutory right. *Thermtron*, 423 U.S. at 344 (discussing "the right to remove" actions brought in the state system).

Kayne never mentions this important principle of Delaware law. Kayne comes closest to addressing this standard on page 10 of its brief, but Kayne points to no specific language in §9.3(a) that directly addresses removal rights. The closest text is subparagraph (b), but waiver of objections to venue can be viewed as "clear affirmative words" waiving removal rights only if reasonable objective persons would understand that "venue" really means "venue and remand rights." That is not a reasonable understanding. Because the parties agree that Delaware law governs interpretation of this contract, Kayne should not be permitted to assert a waiver of statutory removal rights that does not meet the requirements of Delaware law.

Fourth, the plain language of §9.3(a) does not limit the possible forums to non-federal court systems. In fact, the language expressly contemplates that the parties might bring a dispute before this court by expressly identifying "federal courts in the District of Delaware" as among the courts in which disputes "must be brought." The consent language in subparagraph (a) moreover, refers back to both court systems when it sets forth the parties' "consent [] to the exclusive jurisdiction of such courts."

Fifth, Delaware contract law frequently applies the principles of *expressio unius est exclusio alterius* (expression or inclusion of one thing implies the exclusion of the other) when construing contract terms. *See, e.g., Cannon v. Stephens*, 159 A. 234, 237 (Del. Ch. 1932) (finding that a clear and unambiguous contractual grant of power to sell a specific parcel of land inferentially precluded a finding of power to sell other parcels of land under maxim *expressio*

11

*unius est exclusio alterius*); *Active Asset Recovery Inc. v. Real Estate Asset Recovery Servs., Inc.*, C.A. No. 15478, 1999 Del. Ch. LEXIS 179, at *36 (Del. Ch. Sept. 10, 1999) (holding that sophisticated party's failure to include "overhead costs" in chargeable items under contract inferentially precluded a finding that such overhead costs were intended to be chargeable).

Objective reasonable persons contracting under Delaware law do not lightly ignore this principle. Had the contracting parties desired to bar removal, they could easily have drafted straightforward language to do so (for example, "each party waives all rights of removal") and added it to §9.3(a). Instead, the parties selected language that demonstrates agreement to waive some forum related objections – personal jurisdiction, improper venue and convenience of the parties – but did not mention removal. Reasonable persons contracting under Delaware law are unlikely to bar removal rights by adopting language that addresses topics like venue and inconvenience, but forget to adopt language that mentions removal rights.

A recent decision from the District of Maine, *Spenlinhauer v. R.R. Donnelly & Sons Co.*, 534 F. Supp. 2d 162 (D. Me. 2008), decided under Maine law, employed this analysis to deny a remand motion based on contract language that was very similar to §9.3(a):

> EACH PARTY . . . AGREES . . . THAT IT SHALL BRING ANY ACTION OR PROCEEDING IN . . . [THE STATE OR FEDERAL COURTS IN MAINE OR NEW YORK] (THE "CHOSEN COURTS") . . . AND (I) IRREVOCABLY SUB-MITS TO THE EXCLUSIVE JURISDICTION OF THE CHOSEN COURTS, (II) **WAIVES ANY OBJECTION TO LAYING VENUE IN ANY SUCH ACTION OR PRO-CEEDING IN THE CHOSEN COURTS, (III) WAIVES ANY OBJECTION THAT THE CHOSEN COURTS ARE AN INCONVENIENT FORUM** OR DO NOT HAVE JURIS-DICTION OVER ANY PARTY HERETO AND [CONSENTS TO SERVICE OF PROCESS].

*Id.* at 162 (emphasis added). This language is nearly identical to the language in §9.3(a), yet the court found no waiver of removal rights:

> [T]he forum selection clause does not deal with the removal issue. This is not a clause that gave one party the right to choose the forum. . . . [E]ach party to the contract agreed to all four forums, with no specification of precedence. The removal here does not amount to an attack on personal jurisdiction or venue in Maine Superior Court, or an assertion of forum *non conveniens* principles . . . .

*Id. See also id.* (holding that the waiver clause was limited to challenges based on "jurisdiction, venue, and forum *non conveniens*" as to those "chosen courts").

The Eleventh Circuit in *Global Satellite Communications Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1273 (11th Cir. 2004), also employed an *expressio unius* analysis reversing a remand order. There, the plaintiff claimed that contract language barred removal because the contract "expressly waive[d] the right to contest any issues regarding venue or *in personam* jurisdiction and agree[d] in the event of litigation to submit to the jurisdiction of Broward County, Florida." *Id.* at 1273. Applying "the laws of the United States of America," as required under the contract, the Eleventh Circuit reversed because "[t]he express waiver is clearly limited to issues regarding venue or *in personam* jurisdiction, and does not encompass the statutory right to remove." *Id.*

The absence of any express treatment of removal of rights, coupled with the presence of language in §9.3(a) designed to facilitate litigation in Delaware courts, strongly supports the conclusion that objective reasonable persons would not view the Jurisdiction Clause as addressing removal rights. *See also Newman/Haas Racing v. Unelko Corp.*, 813 F. Supp. 1345 (N.D. Ill. 1993) (finding that nearly identical language was "included for geographic convenience rather than to vest one party with the right to choose among designated fora") (applying Illinois law).

Sixth, the unique nature of the split Delaware system of law and equity also makes it plain that the Jurisdiction Clause is designed to facilitate litigation in the Delaware courts generally, rather than to allow a plaintiff to choose and lock-in a single Delaware forum. This is

13

illustrated by Kayne's complaint, which includes one count – negligent misrepresentation (also known as equitable fraud) – that is cognizable only in equity and that cannot be brought in the Delaware Superior Court.[6] If this matter were pending in the Delaware Superior Court, Kayne's negligent misrepresentation claim would be subject to transfer to the Court of Chancery under 10 *Del. C.* § 1902. *See Mark Fox Group*, 2003 Del. Ch. LEXIS 71, at *23-24.

Under Kayne's interpretation of §9.3(a), however, Defendants are barred from seeking transfer to the Court of Chancery because the parties allegedly agreed not to challenge the plaintiff's forum through transfer from one court to another. It simply cannot be the case that parties contracting under Delaware law would adopt contract language that forecloses this common remedy in the Delaware state courts. And if litigants can seek transfer between Delaware state courts under the Jurisdiction Clause, why shouldn't they likewise be able to remove an action to federal court?

Finally, Kayne asserts that rejecting its proposed construction of the contract would render §9.3(a) meaningless. (Op. Br. at 11). This assertion, like so many other parts of Kayne's brief, is wrong. Construing the Jurisdiction Clause as not impacting removal does not render §9.3(a) meaningless; all parts of the Jurisdiction Clause have meaning and effect even if §9.3(a) does not impact removal rights.

---

[6] *See Atwell v. RHIS, Inc.*, C.A. No. 02C-12-003WLW, 2006 Del. Super. LEXIS 425, at *5 (Del. Super. Ct. Aug. 18, 2006) (explaining that the Delaware Court of Chancery has exclusive jurisdiction over negligent misrepresentation causes of action except where such causes of action are raised in the context of the Consumer Fraud Act). *See also Mark Fox Group, Inc. v. E.I. DuPont de Nemours & Co.*, 2003 Del. Ch. LEXIS 71, at *18-19 (Del. Ch. July 2, 2003) ("the Court of Chancery has retained exclusive, rather than concurrent, jurisdiction over [claims for negligent or innocent misrepresentation]," even when the only remedy sought is money damages) (citing cases).

**B.      Kayne's Interpretation Of The "Jurisdiction Clause" Will Upset Commercial Expectations Formed Under Many Commercial Agreements Containing Nearly Identical Language And Structure.**

Several leading transactional drafting guides and treatises contain jurisdiction clauses that are very similar to §9.3(a), yet these treatises utterly fail to mention any impact on the contracting parties' removal rights. *See,* e.g., COMMITTEE ON NEGOTIATED ACQUISITIONS, AM. BAR ASS'N, MODEL STOCK PURCHASE AGREEMENT WITH COMMENTARY at 218-19 (1995) (explaining that an almost identical provision[7] "is designed to ensure that jurisdiction can be obtained for any litigation arising from the acquisition" and not mentioning removal); COMMITTEE ON NEGOTIATED ACQUISITIONS, AM. BAR ASS'N, MODEL ASSET PURCHASE AGREEMENT WITH COMMENTARY at 252-53 (2001) (nearly identical clause titled "Jurisdiction; Service of Process"); AM. BAR ASS'N, MODEL JOINT VENTURE AGREEMENT WITH COMMENTARY at 210-11 (2006) (clause titled "Jurisdiction; Service of Process" largely mirrors §9.3(a)); Tina L. Stark ed., NEGOTIATING AND DRAFTING CONTRACT BOILERPLATE at 128-44 (2003) (discussing forum selection and consent to jurisdiction clauses as relating to challenges for lack of personal jurisdiction and under forum *non conveniens,* and never mentioning any potential waiver of the removal right through the forms of clauses included in the section); Brad S. Karp, *The Litigation Angle in Drafting Commercial Agreements,* reprinted in DRAFTING CORPORATE AGREEMENTS at 661-710 (Practicing Law Institute 2002) (nearly identical to clause titled Forum Designation Clauses and Consent to Jurisdiction Clauses); 4 CONTEMPORARY CORPORATION FORMS ¶ 13.1.93 (2d ed. 2008) (clause

---

[7]     The provision in the Model Stock Purchase Agreement is titled "Jurisdiction; Service of Process" and provides: "Any action or proceeding, seeking to enforce any provision of, or based on any right arising out of, this Agreement may be brought against any of the parties in the courts of the State of _____, County of _____, or, if it has or can acquire jurisdiction, in the United States District Court for the _____ District of _____, and each of the parties consents to the jurisdiction of such courts (and of the appropriate appellate courts) in any such action or proceeding and waives any objection to venue laid therein . . . ." *Id.* at 218.

titled "Jurisdiction" largely mirrors §9.3(a)); 5 Jacob Rabkin and Mark H. Johnson, CURRENT

LEGAL FORMS WITH TAX ANALYSIS at 4-1135-36 (LexisNexis 2007) (provision titled "Consent to

jurisdiction and venue" largely mirrors §9.3(a)).

These drafting guides and treatises are notable because they never mention that agree-

ment to language like that found in §9.3(a) constitutes an agreement to waive all removal rights

or allows a plaintiff to lock-in a state forum when it files a complaint.  This is strong evidence

that the drafters of this agreement likewise did not intend to foreclose removal through the use of

this language.  *Cf.*, *e.g.*, *Kronenberg v. Katz*, 872 A.2d 568, 592 (Del. Ch. 2004) (relying on the

absence of discussion in the ABA's MODEL ASSET PURCHASE AGREEMENT WITH COMMENTARY

and similar sources as evidencing the commonly understood meaning of disputed contract lan-

guage under Delaware law), *aff'd*, No. 390,2004, 2005 Del. LEXIS 65 (Del. Feb. 7, 2005).

Moreover, in keeping with treatises and drafting guides, the courts generally describe

similar contractual language in terms that have nothing to do with waiver of removal rights.  For

example, language like that found in §9.3(a) was at issue in a transfer motion in *American Seed*

*Co., Inc. v. Monsanto Co.*, C.A. No. 05-535-SLR (D. Del. Dec. 5, 2005) (Exhibit 1):

> THE PARTIES HERETO IRREVOCABLY (A) SUBMIT TO
> THE EXCLUSIVE PERSONAL JURISDICTION OF ANY
> STATE OR FEDERAL COURT IN THE STATE OF MISSOURI
> IN ANY SUIT, ACTION OR OTHER LEGAL PROCEEDING
> RELATING TO THIS AGREEMENT; (B) AGREE THAT ALL
> CLAIMS IN RESPECT OF ANY SUCH SUIT, ACTION OR
> OTHER LEGAL PROCEEDING MAY BE HEARD AND
> DETERMINED IN, AND ENFORCED IN AND BY, ANY SUCH
> COURT; AND [(C)] WAIVE ANY OBJECTION THAT THEY
> MAY NOW OR HEREAFTER HAVE TO VENUE IN ANY
> SUCH COURT OR THAT SUCH COURT IS AN
> INCONVENIENT FORUM.

*Id.* at 4. The Court denied the defendant's motion to transfer, noting that "[the Court's] under-

standing of the language is simply that all claims raised in any suit, action or other legal proceed-

16

ing relating to a Monsanto agreement[] may be heard and determined by a state or federal court in Missouri." *Id.* at 4-5. The Court added that "if such a suit is brought in a Missouri court, the parties may not object to such suit based on lack of personal jurisdiction or move to transfer based on forum *non conveniens*," *id.* at 5 (emphasis added), but again did not mention removal. *The American Seed* language is quite similar to the language Kayne trumpets here, yet mentions nothing about removal rights.

Likewise, in *Newman/Haas Racing v. Unelko Corp.*, 813 F. Supp. 1345 (N.D. Ill. 1993), the court faced a remand motion based on contract language nearly identical to the Jurisdiction Clause here. In keeping with *American Seed* and the treatises, this court also held that the language was "included for geographic convenience rather than to vest one party with the right to choose among designated fora," and not for the purpose of eliminating removal rights under 28 U.S.C. § 1441.

These interpretations should not be a surprise – they are exactly the interpretations suggested by the plain language of the contract, not to mention the understanding of the language as exemplified in the secondary sources. To hold otherwise, we respectfully submit, would do violence to the parties' actual agreement and to the commercial expectations of untold numbers of businesses around the country.

   **C.    The Decisions Kayne Relies On Do Not Reflect Delaware
          Law And Are Not Controlling In This Dispute.**

Apart from the Third Circuit's *Foster* decision, discussed *infra* at 8-9 (and which we believe nicely illustrates why the plain language of §9.3(a) does not support Kayne's motion), Kayne briefly mentions three decisions to support its argument. (*See* Op. Br. at 9 n.3, 10). None of these decisions, however, contradicts either the plain meaning of §9.3(a) or the general meaning of similar language as employed every day by transactional lawyers around the country.

In *Citimortgage, Inc. v. Loan Link Financial Services*, No. 4:07-CV-1989-SNL, 2008 U.S. Dist. LEXIS 19259 (E.D. Ill. Mar. 12, 2008), for example, the Eastern District of Missouri was interpreting a contract drafted under Missouri law for the purchase of residential mortgage loans, not a stock purchase agreement like here. *Id.*, at *1-2. The court held that the defendant waived its right to remove based on language that included the same "submits" language that was important to the *Foster* court and that is absent here. *Id.*, at *6. More importantly, the *Citimortgage* contract contained an express waiver of "any other substantive or procedural rights or remedies it may have with respect to the maintenance of any such action or proceeding in either forum." *Id.*, at *3 (emphasis added). The court made clear that the parties effectively waived their right to remove by virtue of the emphasized language above. *Id.*, at *6 ("The right of removal is such a substantive or procedural right both parties have 'waived'.").

In *iNet Directories, LLC v. Developershed, Inc.*, 394 F.3d 1081 (8th Cir. 2005), the court interpreted language waiving "any and all objections . . . to the laying of venue of any such suit, action or proceeding . . ." as a waiver of the right to removal. 394 F.3d at 1081. The court did not, however, provide any analysis to support its interpretation of this language, and its analysis was governed by Missouri, not Delaware, law. Why a decision based on Missouri law is con-trolling of language negotiated under Delaware law is never explained by Kayne.

Finally, plaintiff cites *Connecticut Bank of Commerce v. Republic of Congo*, 440 F. Supp. 2d 346, 353 (D. Del. 2006), in a footnote as supporting its position. The contract in that deci-sion, however, was controlled by the laws of England and had drastically different language than the language issue here. For example, the clause provided that "any action . . . against the Borrower . . . . may be brought in the High Court of Justice in England, Federal Courts sitting in, and the State Courts of, New York, New York, U.S.A. and the Courts of the People's Republic

18

of Congo <u>and [the Borrower] irrevocably submits</u> to the jurisdiction of each such court . . . ."

*See Connecticut Bank of Commerce v. Republic of Congo*, C.A. No. 05-672, D.I. 3 Exhibit C §19

(D. Del. Nov. 9, 2005) (Exhibit 2).  Unlike §9.3(a), the *Republic of Congo* clause contained the

same "submits to" language that the *Foster* court emphasized.  Not only was the contract inter-

preted under English – not Delaware – law, but the language of the contract clearly locked-in the

defendant to the forum chosen by the plaintiff.

067235.1001

## CONCLUSION

Kayne's motion should fail on the merits – the four corners of the parties' agreement simply does not demonstrate a waiver of remand rights. The Court should, therefore, deny Kayne's motion.

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

John W. Shaw (No. 3362)
Michele Sherretta Budicak (No. 4651)
James L. Higgins (No. 5021)
1000 West Street, 17th Floor
Wilmington, Delaware 19801
302-571-6600
jshaw@ycst.com

*Attorneys for Defendants Roy Eliasson,*
*Bryon Wolf, and Alfred Wolf*

Dated: April 24, 2008

20

067235.1001

## CERTIFICATE OF SERVICE

I, John W. Shaw, Esquire, hereby certify that on April 24, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

John C. Phillips, Jr., Esquire
Phillips Goldman & Spence, P.A.
1200 North Broom Street
Wilmington, DE 19806

I further certify that on April 24, 2008, I caused a true and correct copy of the foregoing document to be served by e-mail and hand delivery on the above-listed counsel of record.

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

John W. Shaw (No. 3362)
jshaw@ycst.com
Michele Sherretta Budicak (No. 4651)
mbudicak@ycst.com
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19899
(302) 571-6600

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

AMERICAN SEED COMPANY, INC.,       )
et al.,                            )
                                   )
            Plaintiffs,            )
                                   )
       v.                          )   Civ. No. 05-535-SLR
                                   )
MONSANTO COMPANY,                  )
                                   )
            Defendant.             )

O R D E R

At Wilmington this 5th day of December, 2005, having
reviewed defendant's motion to transfer and the papers filed in
connection therewith;

IT IS ORDERED that said motion (D.I. 25) is denied, for the
reasons that follow:

1.   **Background.**  In April 2005, defendant Monsanto Company
filed a complaint against plaintiff American Seed Co., Inc. in
the United States District Court for the Eastern District of
Missouri.  Monsanto Company and Monsanto Technology LLC v.
American Seed Company, Inc., Cause No. 4:05CV00554ERW ("the
Missouri action").  In the Missouri action, Monsanto asserted
that American Seed: (a) failed to submit timely sales reports to
Monsanto under certain license agreements (breach of contract
claim); and (b) sold seed including Monsanto traits after
termination of the license agreements (patent, trademark, Lanham

Act, and unjust enrichment claims).  In May 2005, American Seed answered and counterclaimed, asserting, inter alia, that the agreements at issue were unconscionable.

2.    In July 2005, American Seed initiated the instant litigation by filing a class action antitrust complaint against Monsanto.  In its complaint, American Seed generally alleges that Monsanto has unlawfully maintained monopolies "to deny Monsanto's actual and potential competitors (a) access to foundation seed companies and others needed for the creation or manufacture of competitive corn seed with the competitors' biotechnological traits; and (b) the distribution these Monsanto competitors require to market their biotechnological corn seed. [Monsanto's] agreements impose massive financial penalties on seed companies unless a very high percentage of seeds they sell contain Monsanto traits."  (D.I. 1, ¶ 3)  More specifically, American Seed asserts that Monsanto has used exclusive dealing contracts and bundling agreements to exclude competitors, particularly Syngenta Seeds, Inc.  (D.I. 1, ¶¶ 80-95)

3.    Pending in this court as of July 2004 was a suit filed by Syngenta Seeds against Monsanto.  <u>Syngenta Seeds, Inc. v. Monsanto Co.</u>, Civ. No. 04-908-SLR (the "Syngenta action").  Syngenta is Monsanto's leading competitor in biotechnology corn seed.  In its suit, Syngenta alleges that Monsanto has monopolized (and attempted to monopolize) markets for particular

biotechnology traits in corn.  Like American Seed, Syngenta alleges that Monsanto has used exclusive dealing contracts and bundling agreements to exclude competitors.  Both Syngenta and American Seed have asserted that Monsanto has pressured customers (e.g., foundation seed companies) not to deal with Syngenta.

4.    **Standard of Review.**  Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interests of justice.  Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice.  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp.2d 192, 208 (D. Del. 1998).

5.    The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." Bergman v. Brainin, 512 F. Supp. 972, 973 (D. Del. 1981) (citing Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970). "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail".  ADE Corp. v. KLA-Tencor Corp., 138 F. Supp.2d 565, 567 (D. Del. 2001); Shutte, 431 F.2d at 25.

3

6.   **Discussion.**  Monsanto moves to transfer this lawsuit to the United States District Court for the Eastern District of Missouri, arguing that American Seed has waived any objections to such a transfer by virtue of a forum selection clause contained in the now terminated Monsanto license agreements.  Monsanto further argues that American Seed's antitrust allegations constitute compulsory counterclaims in the Missouri action.

7.   **Forum selection clause.**  The forum selection clause at issue provides as follows:

> IT IS THE INTENTION OF THE PARTIES HERETO THAT ALL QUESTIONS WITH RESPECT TO THE CONSTRUCTION OF THIS AGREEMENT AND THE RIGHTS AND LIABILITIES OF THE PARTIES HERETO SHALL BE DETERMINED IN ACCORDANCE WITH THE LAWS OF THE STATE OF MISSOURI APPLICABLE TO BUSINESS ARRANGEMENTS ENTERED INTO AND PERFORMED ENTIRELY WITHIN THE STATE OF MISSOURI.  THE PARTIES HERETO IRREVOCABLY (A) SUBMIT TO THE EXCLUSIVE PERSONAL JURISDICTION OF ANY STATE OR FEDERAL COURT IN THE STATE OF MISSOURI IN ANY SUIT, ACTION OR OTHER LEGAL PROCEEDING RELATING TO THIS AGREEMENT; (B) AGREE THAT ALL CLAIMS IN RESPECT OF ANY SUCH SUIT, ACTION OR OTHER LEGAL PROCEEDING MAY BE HEARD AND DETERMINED IN, AND ENFORCED IN AND BY, ANY SUCH COURT; AND C)WAIVE ANY OBJECTION THAT THEY MAY NOW OR HEREAFTER HAVE TO VENUE IN ANY SUCH COURT OR THAT SUCH COURT IS AN INCONVENIENT FORUM.

(D.I. 27, exs. A-C at ¶ 11.08; ex. D at ¶ 8.08)(capitalization in originals)

8.   I conclude that the above recited forum selection clause does not mandate that American Seeds' antitrust claims must be heard in Missouri.  My understanding of the language is simply that all claims raised in any suit, action or other legal

4

proceeding relating to a Monsanto agreement[1] may be heard and determined by a state or federal court in Missouri; if such a suit is brought in a Missouri court, the parties may not object to such suit based on lack of personal jurisdiction or move to transfer based on forum non conveniens.

   9.   **Compulsory counterclaim.**  A counterclaim is considered to be compulsory if "it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a).  "For a claim to qualify as a compulsory counterclaim, there need not be precise identity of issues and facts between the claim and the counterclaim; rather, the relevant inquiry is whether the counterclaim 'bears a logical relationship to an opposing party's claim.'" <u>Transamerica Occidental Life Ins. Co. v. Aviation Office of America, Inc.</u>, 292 F.3d 384, 389 (3d Cir. 2002).  Put another way, "a counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts." <u>Great Lakes Rubber Corp. V. Herbert Cooper Co.</u>, 286 F.2d 631, 634 (3d Cir. 1961).

---

   [1]Of course, there is the further question of whether American Seed's antitrust claims "relate" to a Monsanto agreement.

5

10.  The question, as framed by the papers, is whether the interests of justice are best served by trying American Seed's antitrust claims with the license dispute being litigated in the Missouri action or in conjunction with the antitrust claims being litigated in the Syngenta action.  I conclude that the broad issues at stake in the instant antitrust case are more akin to the Syngenta action than the Missouri action.  Therefore, Monsanto's motion to transfer is denied, without prejudice to renew if it becomes apparent through further discovery and other pretrial proceedings that the interests of justice warrant a transfer to Missouri.

United States District Judge

# EXHIBIT 2

received, on the next working day in that place), in the case of letters thirty days after having been put in the post (airmail if addressed to another country) postage prepaid and in the case of telegrams, fifteen days after despatch.

19. Law and Jurisdiction

(A) This Agreement shall be governed by the laws of England. The Borrower hereby irrevocably agrees that any suit, action or proceeding against the Borrower arising out of or in connection with this Agreement may be brought in the High Court of Justice in England, Federal Courts sitting in, and the State Courts of, New York, New York U.S.A. and the Courts of The People's Republic of the Congo and irrevocably submits to the jurisdiction of each such court, but nothing shall preclude the Lender from bringing any proceedings arising out of or in connection with this Agreement in the courts of any other competent jurisdiction, and proceedings in one jurisdiction shall not preclude proceedings in another jurisdiction whether concurrent or not.

(B) The Borrower hereby irrevocably appoints The Law Debenture Trust Corporation p.l.c., Estates House, 66 Gresham Street, London EC2B 7HX England and United States Corporation Company, 70 Pine Street, New York, New York 10270 U.S.A. as its agents for service of process in any such suit, action or proceedings in England and New York, respectively, provided that if at any time The People's Republic of the Congo maintains an Embassy or Consulate in London or New York, any process relating to proceedings arising out of or in connection with this Agreement may be validly served on the Borrower if served on the Ambassador or Consul-General for the time being of The People's Republic of the Congo in London or, as the case may be, New York.

(C) The Borrower consents generally in respect of any suit, action or proceedings arising out of or in connection with this Agreement to the giving of any relief, or the issuance of any process in connection with any such suit, action or proceedings including, without limitation, the making, enforcement or execution against any property whatsoever (irrespective of its use or intended use) of any order or judgment that may be made or given in such action or proceedings.

(D) To the extent that the Borrower may in any jurisdiction claim for itself or its assets immunity from suit, execution, attachment (whether in aid of execution, before judgment or otherwise) or other legal process and to the extent that in any such jurisdiction there may be attributed to itself or its assets such immunity (whether or not claimed) the Borrower agrees not to claim and waives such immunity to the fullest extent permitted by the laws of that jurisdiction including, in particular, that in any proceedings taken in New York the foregoing waiver of immunity shall have effect under and be construed in accordance with the United States Foreign Sovereign Immunities Act of 1976.

20. Language - This Agreement is being executed in English and French versions. In the event of any discrepancy between the two versions, the English version shall for all purposes prevail. All notices, communications and other documents to be delivered under this Agreement by the Borrower