IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KAYNE SUNSTATE INVESTORS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 08-141-SLR |
| | ) | |
| ROY ELIASSON, BRYON WOLF, | ) | |
| and ALFRED WOLF, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO STAY THIS ACTION IN FAVOR OF THE RELATED ACTION CURRENTLY PENDING IN FLORIDA OR, ALTERNATIVELY, TO DISMISS**

John W. Shaw (No. 3362 )
Michele Sherretta Budicak (No. 4651)
James L. Higgins (No. 5021)
YOUNG CONAWAY STARGATT &
    TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
302-571-6600
jshaw@ycst.com

*Attorneys for Defendants Roy Eliasson,
Bryon Wolf, and Alfred Wolf*

Dated: May 1, 2008

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................... iii

ARGUMENT ....................................................................................................... 1

I.    IF THIS ACTION IS NOT STAYED OR DISMISSED,
      THE ASSETS MEANT TO BE PROTECTED BY THE
      FLORIDA STAY WILL BE AT RISK OF DILUTION ........................................ 1

      A.    Kayne Does Not Interpret Or Discuss
            The Meaning Of "Affiliates" .................................................... 1

      B.    Kayne's Own Complaint Evidences The Degree of Intertwining
            Between This Action And The Florida ....................................... 3

II.   BECAUSE KAYNE'S CLAIMS FAIL THE SUPREME COURT'S
      TWO-PRONG RIPENESS STANDARD, THIS COURT LACKS
      SUBJECT MATTER JURISDICTION UNDER RULE 12(b)(1) ........................... 4

III.  RULE 9(b) REQUIRES A PLAINTIFF TO INJECT SOME
      SPECIFICITY TO SUBSTANTIATE ITS ALLEGATIONS – THROUGH
      SOME MEANS – BUT HERE THE COMPLAINT DOES NOTHING AT
      ALL TO SUBSTANTIATE ITS ALLEGATIONS ............................................... 5

      A.    Kayne's Failure To Plead Falsity In Compliance With The Rules
            Pervades All Of The Allegations Of The Complaint ................... 5

      B.    Kayne's Complaint Fails To Use Any Means To Identify
            The Allegedly Fraudulent Statements With Specificity .............. 8

      C.    Kayne's Reliance On The Purchase Agreement And The FTC
            Complaint Does Not Enable It To Satisfy Rule 9(b) ................. 12

      D.    Kayne's Complaint Does Not Fulfill Any Of The Purposes
            Of Rule 9(b) ........................................................................... 13

IV.   KAYNE HAS FAILED TO ALLEGE (AND CANNOT ALLEGE)
      THAT ITS CLAIM FOR BREACH OF CONTRACTUAL
      REPRESENTATIONS AND WARRANTIES SATISFIES THE
      CONDITION PRECEDENT FOUND  IN PURCHASE
      AGREEMENT §8.3 .................................................................................. 15

A.    Purchase Agreement §8.3 Clearly And Unambiguously Is A
Condition Precedent To Bringing Any Claim For Breach
Of Representations and Warranties ...........................................................15

B.    Kayne Has No Credible Response To Our Argument
That The Complaint Fails To Allege Facts Sufficient To
Show Compliance With The §8.3 Condition Precedent ...........................17

CONCLUSION....................................................................................................................20

## TABLE OF AUTHORITIES

Cases                                                                                          Pages(s)

*3801 Beach Channel, Inc. v. Shvartzman,*
   2007 WL 2891119 (E.D.N.Y. Sept. 28, 2007) ................................................................12, 13

*A.H. Robins v. Piccinin,*
   788 F.2d 994 (4th Cir. 1986)........................................................................................3

*Artway v. Attorney Gen.,*
   81 F.3d 1235 (3d Cir. 1996)........................................................................................4

*Bell Atlantic Corp. v. Twombly,*
   127 S. Ct. 1955 (2007)................................................................................................19

*Berkes v. San Diego Foreclosure Servs., Inc.,*
   2006 Cal. App. Unpub. LEXIS 8829 (Cal. Ct. App. Oct. 3, 2006) ......................................1, 2

*Beshears v. Provident Life & Accident Ins. Co.,*
   2007 U.S. Dist. LEXIS 35947 (D. Ariz. May 14, 2007) ........................................................7

*Breakaway Solutions, Inc. v. Morgan Stanley & Co., Inc.,*
   2004 Del. Ch. LEXIS 125 (Del. Ch. Aug. 27, 2004)........................................................15

*Brown v. SAP America, Inc.,*
   1999 U.S. Dist. LEXIS 15525 (D. Del. Sept. 13, 1999) ....................................................10

*Cantor Fitzgerald, L.P. v. Cantor,*
   2000 Del. Ch. LEXIS 43 (Del. Ch. Mar. 13, 2000) ..........................................................2

*Concept Innovation v. CFM Corp.,*
   2005 WL 670637 (N.D. Ill. Mar. 21, 2005)..................................................................13

*Florida Dep't of Insurance v. Blackburn,*
   209 B.R. 4 (Bankr. M.D. Fla. 1997) ..........................................................................2

*FTC v. 3R Bancorp,*
   2005 U.S. Dist. LEXIS 12503 (N.D. Ill. Feb. 23, 2005) ......................................................2

*FTC v. Para-Link Int'l, Inc.,*
   2001 U.S. Dist. LEXIS 17371 (M.D. Fla. May 30, 2001)......................................................1

*GB Biosciences Corp. v. Ishihara Sangyo Kaisha, Ltd.,*
   270 F. Supp. 2d 476 (D. Del. 2003)..............................................................................17

*Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.,*
    817 A.2d 160 (Del. 2002) ................................................................................17

*In re Johns-Manville Corp.,*
    26 Bankr. 420 (S.D.N.Y. 1983) ........................................................................3

*Klein v. General Nutrition Cos.,*
    186 F.3d 338 (3d Cir. 1999)............................................................................11

*Levine v. Metal Recovery Techs.,*
    182 F.R.D. 112 (D. Del. 1998).................................................................6, 7, 9

*Lum v. Bank of America,*
    361 F.3d 217 (3d Cir. 2004).......................................................................11, 12

*Nextel Commc'ns v. Margate,*
    305 F.3d 188 (3d Cir. 2002)..............................................................................5

*MBIA Ins. Corp. v. Royal Indem. Co.,*
    221 F.R.D. 419 (D. Del. 2004) .......................................................................8, 9

*Reid v. Thomson Homes at Centreville, Inc.,*
  2007 WL 4248478 (Del. Super. Nov. 21, 2007).........................................17

*In re Rockefeller Center Prop., Inc. Sec. Litig.,*
    311 F.3d 198 (3d Cir. 2002)............................................................................11

*Rolo v. City Investing Co. Liquidating Trust,*
    155 F.3d 644 (3d Cir. 1998)............................................................................11

*S. Megga Telecomm. Ltd. v. Lucent Tech., Inc.,*
    1997 U.S. Dist. LEXIS 2312 (D. Del. Feb. 14, 1997) ...................................10, 11

*SEC v. Burns,*
    816 F.2d 471 (9th Cir. 1987) ............................................................................2

*Shamrock Holdings, Inc. v. Arenson,*
    456 F. Supp. 2d 599 (D. Del. 2006)................................................................18

*Shapiro v. UJB Fin. Corp.,*
    964 F.2d 272 (3d Cir. 1992)..........................................................................6, 7

*In re Suprema Specialties, Inc. Sec. Litig.,*
    438 F.3d 256 (3d Cir. 2006)............................................................................14

*Toner v. Allstate Ins. Co.*,
    821 F. Supp. 276 (D. Del. 1993)..................................................................14

*Tracinda Corp. v. DaimlerChrysler AG*,
    197 F. Supp. 2d 42 (D. Del. 2002)..............................................................18

*Tredennick v. Bone*,
    2007 U.S. Dist. LEXIS 87941 (W.D. Pa. Nov. 29, 2007) ..........................6

*United States v. Broad. Music, Inc.*,
    275 F.3d 168 (2d Cir. 2001)..........................................................................4

<u>Rules</u>

6 *Del. C.* § 18-305............................................................................................8

Fed. R. Civ. P. 9(b) .............................................................................. passim

<u>Other Authorities</u>

*Moore's Federal Practice* § 9.03[1][g] ...........................................................7

*Moore's Federal Practice* § 101.76[2] ...........................................................5

## ARGUMENT

I.    **IF THIS ACTION IS NOT STAYED OR DISMISSED, THE ASSETS MEANT TO BE PROTECTED BY THE FLORIDA STAY WILL BE AT RISK OF DILUTION.**

    A.    **Kayne Does Not Interpret Or Discuss The Meaning Of "Affiliates."**

There is no dispute about whether the plain text of the Florida stay order extends to "affiliates" of the Florida "Receivership Defendants;" even Kayne concedes this on page 7 of its answering brief (hereinafter "Ans. Br."). Rather than show that the word "affiliates" has some other meaning, Kayne instead spends page after page focusing on the wrong term in the Florida stay order – "Receivership Defendants." The only issue here is whether Messrs. Eliasson, Wolf, and Wolf are "affiliates" as that term is used in the Florida stay order. Kayne never addresses this question in its brief.

For example, the two decisions Kayne relies upon never address whether the term "affiliates" can include controlling stockholders. Neither of these two decisions discusses the word "affiliates," quotes the stay order language used in those cases,[1] or comes close to discussing whether controlling stockholders fall within that definition under the stay order. *FTC v. Para-Link Int'l, Inc.*, 2001 U.S. Dist. LEXIS 17371 (M.D. Fla. May 30, 2001), for example, involved the possible foreclosure of a mortgage held by a corporate officer, who apparently was not a stockholder, let alone a controlling stockholder, of the corporate defendant. No one in *Para-Link* argued that the officer qualified as an "affiliate." The decision in *Berkes v. San Diego*

---

[1]    It is therefore unclear how Kayne can assert that the *Para-Link* stay order was "almost identical to the Stay Order" at issue in this motion. (Ans. Br. at 7.)

*Foreclosure Servs., Inc.*, 2006 Cal. App. Unpub. LEXIS 8829 (Cal. Ct. App. Oct. 3, 2006),[2] also does not address whether the definition of "affiliate" includes a controlling stockholder.

Indeed, courts often hold that "affiliates" include the individual owners and controlling stockholders of entities, just as was the case in *3R Bancorp*. *See, e.g.*, *SEC v. Burns*, 816 F.2d 471, 475 (9th Cir. 1987) (explaining that under the Securities and Exchange Act, an "affiliate" is someone who "controls, is controlled by, or is under common control with" another); *Florida Dep't of Insurance v. Blackburn*, 209 B.R. 4, 7-8 (Bankr. M.D. Fla. 1997) (explaining that a controlling individual can be an affiliate of a debtor in receivership under a Florida statute defining affiliate); *Cantor Fitzgerald, L.P. v. Cantor*, 2000 Del. Ch. LEXIS 43, at *79 n.84 (Del. Ch. Mar. 13, 2000) (finding that controlling stockholder was an affiliate of company). Even the parties' Purchase Agreement defines "Affiliates" to include controlling stockholders (Purchase Agreement §1.1), and the complaint and Kayne's answering brief acknowledge that the Defendants are controlling stockholders of the Receivership Defendants. (*See, e.g.*, Ans. Br. at 21) (explaining that Kayne's claims were against "three individual defendants *who tightly controlled and managed their alter ego companies*") (emphasis added).

Kayne finally argues that *3R Bancorp* is not on point. But the *3R Bancorp* stay order was the same in all material respects as the stay order at issue here. *FTC v. 3R Bancorp*, 2005 U.S. Dist. LEXIS 12503, at *3 (N.D. Ill. Feb. 23, 2005). The *3R Bancorp* decision directly described its view that controlling stockholders fall within the definition of the word "affiliates." *Id.* at *2-3. And the *3R Bancorp* decision extended the stay language to the controlling stockholder as an affiliate. *Id.* Because Kayne has offered nothing in support of its assertion that the Defendants

---

[2]    Although Kayne chastised the Defendants for citing unreported, non-precedential opinions in the Opening Brief, *Berkes* is both non-published and by its own terms non-citable. California does not even have a rule like Federal Rule of Appellate Procedure 32.1, which now permits citation of all judicial decisions.

2

do not qualify as affiliates of the Florida "Receivership Defendants," Kayne's argument that a stay is unwarranted under these circumstances should be rejected.

### B.    Kayne's Own Complaint Evidences The Degree Of Intertwining Between This Action And The Florida Action.

Kayne's discretionary stay argument confuses the relevant standards.  This is not, as Kayne's answering brief suggests, a situation where the Defendants request that this Court stay the action pending the resolution of a *first-filed* action involving the same parties and the same claims.  Rather, the Defendants request that this Court stay the action in its inherent discretion to control its docket to prevent needless and wasteful litigation that is better suited to be asserted, if ever, at a later date.  (*See* Opening Brief, "Op. Br." at 9-12).

As set forth in the Opening Brief, Kayne's Complaint is littered with claims that would not have – and could not have – been brought were it not for the FTC allegations, and Kayne offers nothing in the way of independent support for these claims.  Instead, the complaint repeatedly asserts that Kayne's claims are supported "*[i]f the allegations in the FTC Suit are correct*" or "*if the FTC's allegations are proven true.*"  (Compl. at ¶¶ 3, 17, 27, 28, 29, 34, 43, 52).  This is precisely the type of situation where a court should stay its hand to preserve judicial resources and avoid duplicative and potentially inconsistent judgments.

Kayne rightly points out that none of the findings in the FTC action will be binding on Kayne in this action under claim preclusion or issue preclusion.  Kayne ignores, however, that the proceedings in this action may well prove binding on the defendants in the Florida action should this litigation go forward.  *See A.H. Robins v. Piccinin*, 788 F.2d 994, 1005 (4th Cir. 1986)  (explaining that finding of liability against officers and employees could have collateral estoppel effect against debtor in subsequent actions) (citing *In re Johns-Manville Corp.*, 26 Bankr. 420, 423 (S.D.N.Y. 1983)).

II.    **BECAUSE KAYNE'S CLAIMS FAIL THE SUPREME COURT'S
        TWO-PRONG RIPENESS STANDARD, THIS COURT LACKS
        SUBJECT MATTER JURISDICTION UNDER RULE 12(b)(1).**

Kayne sets forth no valid reason why its claims are ripe.[3]  Kayne's claims, in fact, depend

on future events and/or factual findings that are far too remote at this time to support a finding of

ripeness.  *See Artway v. Attorney Gen.*, 81 F.3d 1235, 1248 (3d Cir. 1996) (explaining that

ripeness is often lacking on the ground that anticipated events and injury are simply too remote

and uncertain to justify present adjudication) (internal quotation marks omitted); *see also United

States v. Broad. Music, Inc.*, 275 F.3d 168, 178 (2d Cir. 2001) ("The ripeness doctrine cautions

courts against adjudicating contingent future events that may not occur as anticipated, or indeed

may not occur at all.") (internal quotation marks omitted).

Although Kayne characterizes the Defendants' view of Kayne's premature and purely

speculative claim of damages as "preposterous," (*see* Ans. Br. at 17 n.5), there is nothing in

Kayne's complaint, answering brief, or anywhere else that indicates that Kayne has actually lost

even a part of its investment, let alone the full value of its investment.  Indeed, while Kayne

points to "damages that already accrued in the past and continue to accrue," it gives no indication

of what those damages actually are.

Kayne also cannot withstand the second prong of the ripeness inquiry.  Kayne asserts,

again without any support, that "[f]orcing Kayne to wait to bring its action until after the

conclusion of the FTC Action poses risk of serious financial hardship to Kayne and threatens it

[sic] continued viability." (*See* Ans. Br. at 18).  Kayne argues that "evidence that may support

---

[3]    Kayne once again misstates Defendants' argument when it suggests that Defendants are
seeking dismissal because "none of Kayne's claims is ripe for decision." (Ans. Br. at
14).  Defendants argue no such thing.  Rather, Defendants were very careful to indicate
that only those claims that are contingent on the outcome of the FTC action are not yet
ripe (while the remaining claims are dismissible for other reasons).

4

its claims [will be] irretrievably lost, either through faded memories or the failure to preserve documents, thereby damaging or destroying its claims." (*See* Ans. Br. at 11). But every premature plaintiff faced with a motion to dismiss on ripeness grounds could allege such problems to show hardship. The ripeness doctrine would be a dead letter were plaintiffs able to circumvent it though a showing of such feeble claims of hardship relating to speculative future litigation. *Cf. 15 Moore's Federal Practice* § 101.76[2] (Matthew Bender 3d ed.) ("The hallmark of cognizable hardship is usually direct and immediate harm."); *accord Nextel Commc'ns v. Margate*, 305 F.3d 188, 194 (3d Cir. 2002).

III.    **RULE 9(b) REQUIRES A PLAINTIFF TO INJECT SOME SPECIFICITY TO SUBSTANTIATE ITS ALLEGATIONS – THROUGH SOME MEANS – BUT HERE THE COMPLAINT DOES NOTHING AT ALL TO SUBSTANTIATE ITS ALLEGATIONS.**

   A.    **Kayne's Failure To Plead Falsity In Compliance With The Rules Pervades All Of The Allegations Of The Complaint.**

Kayne asserts that the complaint satisfies Rule 9(b), despite its allegations of falsity based on "information and belief," because Defendants "ignore the many averments clearly alleging falsity." (Ans. Br. at 23). But Defendants do not "ignore" Kayne's averments of falsity, but rather, point out that the basis for these averments is "information and belief." Kayne candidly admits that its only basis for averring the falsity of the alleged statements Defendants made about the company not being under investigation by the FTC is "information and belief:"

> *Upon information and belief*, prior to March 31, 2007, the FTC was in fact engaged in an active investigation of Defendants . . . .

(Complaint ¶ 24). The complaint contains many other allegations regarding falsity that are conditional on the outcome of the Florida action. (See Op. Br. at 22-23). These concessions are an admission that Kayne itself has no knowledge of the true facts. It cannot be the case that, by

5

simply omitting the phrase "information and belief" from other, nearly identical allegations, Kayne can save its complaint.

Beyond this argument, Kayne does not seriously contest the cases we cite which demonstrate that it is generally improper to base fraud allegations on information and belief. The lone case that Kayne does cite on this point, *Tredennick v. Bone*, 2007 U.S. Dist. LEXIS 87941 (W.D. Pa. Nov. 29, 2007), actually supports Defendants[4] and does not discuss the appropriateness of pleading fraud claims on information and belief.

Kayne's main response is that it falls outside the general rule because it could not be in the same position as the Defendants to know about the company's compliance with the FTC regulations or the FTC's investigation. This response does not fit within the exception to the general rule, however, because Kayne has not specifically plead that the facts surrounding the alleged fraud are "peculiarly within the knowledge and control of Defendants," as the law requires. *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 285 (3d Cir. 1992) ("[A]t the very least plaintiffs must allege that the necessary information lies within defendants' control.").

Normally, this exception is invoked where the alleged fraud occurred internal to a corporation (for example, in a stock laundering scheme), and the plaintiff has no reasonable means of learning the information. *See, e.g.*, *Levine v. Metal Recovery Techs.*, 182 F.R.D. 112, 115 (D. Del. 1998) (noting that a common example of this situation is where "plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs") (quoting *Shapiro*). *See also Moore's Federal Practice*, Section 9.03[1][g] at 9-27 (giving, as an example

---

[4]     In addition to holding that the element of the fraud claim that was plead on information and belief was insufficient, the *Tredennick* court also held, consistent with Defendants' argument, below at III.B, that plaintiff's complaint did not meet Rule 9(b)'s requirements because the allegations "improperly 'lump[ed]' defendants together and fail[ed] to provide sufficient notice to all defendants regarding the fraud allegations." *Id.*, at *16.

of the types of cases in which pleading on information and belief is allowed, "securities case[s] involving corporate fraud . . . [where] the alleged misrepresentations come from 'group published information' such as prospectuses, annual reports, or press releases," and it is impossible to identify the author).

Here, internal corporate affairs are not the issue. Kayne alleges that false statements were made to Kayne. Kayne should know which of those statements are really at issue. Kayne should be required to investigate and identify which of the statements are allegedly false, rather than merely assert, on information and belief, that some unidentified statements made by some unidentified person at some unidentified time must (in Kayne's view) be false simply because the FTC filed a complaint. To paraphrase the words of *Shapiro* and *Levine*: Kayne should "be expected to have personal knowledge of the[se kinds of] details" because the statements were allegedly made to Kayne.[5]  *Beshears v. Provident Life & Accident Ins. Co.*, 2007 U.S. Dist. LEXIS 35947 (D. Ariz. May 14, 2007) ("Plaintiff, as the recipient of the allegedly fraudulent statements and the person who relied on them, should be able to describe the statements, who made them, and why they were false. In any event, Plaintiff's complaint does not allege that Defendants have exclusive control of information Plaintiff needs to plead his claim, a necessary allegation under his own cases."). Additionally, any assertion by Kayne that it did not have access to the factual information necessary to properly plead its claims is belied by the fact that Kayne, as a member in the Defendants' companies, has a right to full access to the companies'

---

[5]  Kayne offers no facts whatsoever to support its suggestion that this case is "peculiar" or in any way different than any other fraud case. Kayne's argument on this point also ignores the best evidence that the facts surrounding the alleged fraud are not "peculiarly within the knowledge or control of the defendant:" the FTC's claim itself. Kayne offers no explanation for how the FTC was able to obtain information sufficient for it to properly make allegations if such information is "peculiarly within the knowledge or control of the defendant."

records, Del. C. § 18-305.  Kayne also had full access to all available information about the

companies' operations during the due diligence period prior to the execution of the Purchase

Agreement.

Finally, Kayne should not be allowed to amend to correct this problem.  If Kayne cannot

plead on anything other than information and belief now (and even Kayne's answering brief is

devoid of any additional facts to support the falsity of its fraud claims), how can Kayne plead

anything more?

### B.    Kayne's Complaint Fails To Use Any Means To Identify The Allegedly Fraudulent Statements With Specificity.

Kayne spends three pages of its brief citing decisions that establish a broadly understood

and uncontested principle – that there are many different ways to satisfy the notice and

particularity requirements of Rule 9(b).  It is indeed true that, in some circumstances, it is not

necessary to allege the identity of the speaker and listener, and that in other circumstances it is

not necessary to allege the date, time, and place of the allegedly fraudulent statements.  It is also

the case, however – as even Kayne acknowledges – that plaintiffs must inject "some measure of

substantiation into their allegations of fraud."  (Ans. Br. at  19).

Here, most charitably construed, the complaint alleges that some or all of the group of

three Defendants made allegedly false, but unspecified, statements to one or more employees or

agents of Kayne at some point during a six month negotiation period.  Kayne's answering brief

fails to provide any example of a case which holds that this kind of pleading satisfies Rule 9(b).

The closest Kayne comes is its citation to *MBIA Ins. Corp. v. Royal Indem. Co.*, 221

F.R.D. 419 (D. Del. 2004).  But, as the *MBIA* court clearly states, its holding was an exception to

the general rule:

8

> When alleging fraudulent behavior against a group of defendants, a
> plaintiff is required to separately plead the fraudulent acts of each
> defendant to satisfy Rule 9(b). . . .  Collective allegations of fraud
> against a group of defendants generally do not satisfy Rule 9(b)
> because the Rule is intended to ensure that each defendant has
> adequate notice of the charges against it, thereby permitting each
> defendant to mount a defense and not just deny that they did
> anything wrong. . . .  However, provided a plaintiff alleges
> sufficiently particularized allegations, there is no *per se* rule that
> group pleading cannot satisfy Rule 9(b).

*Id.* at 421 (emphasis added) (internal citations omitted).  The court went on to hold that because one individual was the speaker for each of the companies he owned, it was not necessary for the plaintiff to "identify which of the SFC Group of Entities Mr. Yao was acting through when he, or the entities, made the various alleged fraudulent statements . . . ." *Id.* at 422.  This fact does not exist here; there are three defendants, and one of them is only a stockholder (Alfred Wolf) with no day-to-day participation in the businesses or in the transaction with Kayne.  "[M]ore importantly" to the *MBIA* court, the plaintiff in that case had plead specific details and examples of the alleged fraud, including the dates of these specific statements.  *Id.*  That is not the case here, where the complaint provides no specific descriptions of any allegedly fraudulent statements or the dates on which such statements were made.

The other cases Kayne cites are unhelpful because they involve allegations that are quite different from the type contained in Kayne's complaint.  For example, *Levine v. Metal Recovery Tech., Inc.*, included a complaint against a corporation, not three individuals. 182 F.R.D. at 114.  The plaintiff alleged that the defendant corporation had fraudulently violated the securities laws through a bribery and stock laundering scheme.  *Id.*, at *2.  The complaint described the bribery and stock laundering scheme in detail, including "sworn testimony . . . that the bribes were given . . . ."  *Id.*, at *8.  The court found that the plaintiff had injected some measure of substantiation into its allegations of fraud by identifying with particularity "the participants in the fraud

(identifying the role of the Baron Chase brokers), the nature of the fraud, where and when the fraud occurred and the means that Defendants used to perpetrate it." *Id.* Those allegations were much more specific than the generalized allegations of statements (which are also not specifically identified and which are alleged on information and belief) made by one or more of the Defendants to one or more representatives or agents of Kayne during a six month negotiation period.

Likewise, in *Brown v. SAP America, Inc.*, 1999 U.S. Dist. LEXIS 15525 (D. Del. Sept. 13, 1999), the plaintiff injected the required "measure of substantiation into [its] allegations of fraud" by providing details of "when and where defendants made the alleged misrepresentations," *id.*, at \*42, making it less important to identify specific speakers and recipients, as these details provided notice of the specific allegedly fraudulent statements that were at issue. The *Brown* complaint also described the alleged oral promises in detail, *id.*, at \*4-5, described a presentation in which more promises were made, *id.*, at \*5, and described a series of allegedly fraudulent tests, *id.* No similar allegations exist here.

The same can be said of the allegations in the complaint in *S. Megga Telecomm. Ltd. v. Lucent Tech., Inc.*, 1997 U.S. Dist. LEXIS 2312 (D. Del. Feb. 14, 1997), where the court found plaintiffs included the required "measure of substantiation in[] their allegations of fraud" because plaintiffs provided extensive details about the substance of the misrepresentations and attached a

letter to the complaint "detailing some of the alleged misrepresentations." *Id.*, at *30. Kayne's complaint does none of those things.[6]

Apart from citing decisions featuring different factual scenarios,[7] Kayne fails to explain why the multiple decisions from the Third Circuit Court of Appeals cited in our Opening Brief are not controlling examples. For example, in *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644 (3d Cir. 1998), the court affirmed the dismissal of plaintiff's complaint, despite detailed allegations of the allegedly fraudulent scheme because "[i]t remain[ed] unclear . . . who misrepresented and concealed the information, when and how." *Id.* at 659. As is the case here, the *Rolo* complaint had no information sufficient to substantiate the claims. Similarly, in *Klein v. General Nutrition Cos.*, 186 F.3d 338 (3d Cir. 1999), the court affirmed the dismissal of plaintiffs' claim that defendant made materially misleading statements noting that "Fed. R. Civ. P. 9(b) requires, at a minimum, that the plaintiff identify the speaker of allegedly fraudulent statements." *Id.* at 345. And in *Lum v. Bank of America*, 361 F.3d 217 (3d Cir. 2004), another case that Kayne fails to address, the Third Circuit affirmed the district court's holding that plaintiffs' conclusory allegations did not satisfy Rule 9(b), noting the allegations "do not indicate

---

[6]   Kayne's attempt to rely on the Purchase Agreement to demonstrate particularity does not alter this conclusion. Even if Kayne is entitled to rely on the provisions of the Purchase Agreement, which Defendants assert it cannot do, *infra* at III.C, the Purchase Agreement does not provide any additional detail as to who at Kayne heard the allegedly false oral statements made during negotiations and who among the Defendants made such statements.

[7]   One of the cases that Kayne relies on, *In re Rockefeller Center Prop., Inc. Sec. Litig.*, 311 F.3d 198 (3d Cir. 2002), actually does involve allegations that are somewhat similar in form to those in Kayne's complaint. The court's holding in *Rockefeller Center*, however, only serves to prove Defendants' argument; the court affirmed a Rule 9(b) dismissal because the complaint failed to identify the speaker of the alleged misrepresentation, *id.* at 218, or to set forth the timing of the alleged misrepresentation with "the sort of precision necessary to meet the requirements of Rule 9(b). . . ." *Id.* at 221. Defendants did not cite to this case in support of their arguments because the court, in some places, applies Rule 9(b)'s standards and the standards of the PSLRA, which are more stringent than those of Rule 9(b), interchangeably.

11

the date, time, or place of any misrepresentation; nor do they provide an alternative means of injecting precision and some measure of substantiation into the fraud allegations because they do not identify particular fraudulent financial transactions."[8] *Id.* at 224.

In sum, if a *pro se* plaintiff's complaint for defamation did not meet Rule 8(a) because the complaint did not identify the speaker of the allegedly defamatory statements, then Kayne's fraud allegations cannot stand here. *See Smiley v. Chrysler*, 2008 U.S. Dist. LEXIS 14124, at *6 (D. Del. Feb. 21, 2008).

**C.    Kayne's Reliance On The Purchase Agreement And The FTC Complaint Does Not Enable It To Satisfy Rule 9(b).**

Kayne next argues that, even if its complaint does not contain enough detail to satisfy Rule 9(b), the contents of the Purchase Agreement and the FTC Complaint do. Kayne forgets, however, that it has only contingently plead that the Purchase Agreement contains false statements, (*see supra* at III.A; Op. Br. at 21-23), and as such cannot satisfy Rule 9(b) on its own.

Moreover, Kayne's cases on this point are not helpful to its cause. For example, Kayne claims that *3801 Beach Channel, Inc. v. Shvartzman*, 2007 WL 2891119 (E.D.N.Y. Sept. 28, 2007),[9] holds that "pleading concerning oral and written fraudulent statements 'in the contract that was prepared' by the defendant were not 'insufficiently particularized for purposes of Rule 9(b)." (Ans. Br. at 23). The full excerpt from the magistrate's report reveals what really happened – "the defendants make no argument that those allegations are insufficiently particularized for purposes of Rule 9(b)." *Id.,* at *8-9. More important, the magistrate went on

---

[8]    Kayne also fails to address any of the cases Defendants cite on page 20 of their Opening Brief, which all stand for the proposition that the kind of vague time frame that Kayne alleges in its complaint is not sufficient to meet the requirements of Rule 9(b).

[9]    Kayne cites not to the opinion of the District Judge, but to the "Report and Recommendation" of the magistrate, which the District Judge attached to its slip opinion.

12

to note that "Some of the latter allegations are arguably insufficiently pleaded under Rule 9(b)" –
exactly the opposite of what Kayne alleges. *Id.* at *9 n.3 (emphasis added). This case does not
support Kayne's argument at all.

   *Concept Innovation v. CFM Corp.*, 2005 WL 670637 (N.D. Ill. Mar. 21, 2005) is not a
good example for a different reason. *Concept Innovation* involved a corporate, not an individual
defendant. The complaint in that case also identified the specific alleged false statements (a
subject on which Kayne apparently has no knowledge of its own), and identified "when and
where" the specific statements were made.

### D.    Kayne's Complaint Does Not Fulfill Any Of The Purposes of Rule 9(b).

   Kayne also casually suggests that its complaint should not be dismissed because the
purposes of Rule 9(b) have been met; adding, "[t]he notion that the [] Defendants somehow lack
notice of the claims against them is preposterous." (Ans. Br. at 18-19). As discussed below,
Kayne has not demonstrated that it has fulfilled any of the purposes of Rule 9(b), including
providing Defendants with notice of its claims.

   Kayne only discusses one of the purposes of Rule 9(b) – providing Defendants with
notice of the misconduct with which they are charged. In support of its argument that Kayne has
provided Defendants with ample notice of its claims, Kayne states only that: "Defendants have
been publicly investigated and sued for fraud by the United States government . . . Kayne has
provided detailed pleadings of the alleged fraud, and incorporated . . . extensive documentation

. . . including the Purchase Agreement and the FTC Complaint." (*Id.* at 19). But none of these things provides Defendants with any information about the allegedly false oral representations that Kayne claims occurred. As Kayne itself has admitted, the allegations in the Florida action do not at all relate to the circumstances surrounding the negotiation of the Purchase Agreement.[10] (*Id.* at 10) ("Unlike the FTC Action, Kayne asserts common law tort and breach of contract claims against the Kayne Defendants arising from a business transaction . . . . Obviously, the claims of the FTC and Kayne do not mirror one another."). Accordingly, the pleadings in the Florida action only put Defendants on notice of the conduct that the FTC has charged them with, not the conduct that Kayne has charged them with.

Kayne also completely ignores the several other purposes that Rule 9(b)'s particularity requirements serve. In addition to providing notice to defendants of the charges against them, Rule 9(b) also serves to "provide an increased measure of protection for [defendants'] reputations, and reduce the number of frivolous suits brought solely to extract settlements," *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 270 (3d Cir. 2006), as well as to "prevent[] fraud actions in which all the facts are learned after the complaint is filed by way of the discovery process." *Toner v. Allstate Ins. Co.*, 821 F. Supp. 276, 284 (D. Del. 1993). This latter purpose is of particular concern here, given that Kayne has admitted in its brief that "[t]he factual record for Kayne's claims already exists and is ready to be fully explored and developed through discovery." (Ans. Br. at 15). This statement, combined with Kayne's inability to provide any factual basis for its fraud claims (even in the face of a motion to dismiss them) demonstrates that

---

[10]     This statement is not in contradiction with Defendants' request for a stay in favor of the Florida action. A stay is appropriate because this action is dependent upon the outcome of the Florida action, not because the two actions are similar.

Kayne has not fulfilled the purposes of Rule 9(b).  Accordingly, Kayne's complaint should be dismissed.

**IV.    KAYNE HAS FAILED TO ALLEGE (AND CANNOT ALLEGE) THAT ITS CLAIM FOR  BREACH OF CONTRACTUAL REPRESENTATIONS AND WARRANTIES SATISFIES THE CONDITION PRECEDENT FOUND IN PURCHASE AGREEMENT §8.3**

**A.    Purchase Agreement §8.3 Clearly And Unambiguously Is A Condition Precedent To Bringing Any Claim For Breach Of Representations And Warranties.**

The Opening Brief explained that any claim for breach of representations and warranties – including Count III – is subject to the conditions set forth in Purchase Agreement §8.3.  Kayne responded by arguing that §8.3 is an indemnity provision and that (according to Kayne) Count III does not seek indemnity, but rather is just a "common law claim for breach of contract."  (Ans. Br. at 26).

A plaintiff cannot avoid a motion to dismiss by attaching a particular name or label to a cause of action; rather, it is well-established that courts must focus on the real allegations brought by the plaintiff.  *Breakaway Solutions, Inc. v. Morgan Stanley & Co., Inc.*, 2004 Del. Ch. LEXIS 125, at *27 (Del. Ch. Aug. 27, 2004) (causes of action should be evaluated by their substance, not the label attached).  The substance of Kayne's claim is that it seeks damages for alleged breach of the representations and warranties.  The question, then, is whether affixing the indemnity label is necessary to make §8.3 applicable to such a claim.

The answer is no.  The language and structure of Article 8 clearly and unambiguously demonstrate that objective, reasonable people in the position of the contracting parties would understand that the conditions precedent in §8.3 are not strictly limited to claims labeled indemnity, but rather are generally applicable to any claim for breach of representations and warranties.  For example, objective, reasonable persons in the position of the contracting parties

15

understand that "indemnification," when used in the context of a stock purchase agreement, is the contractual provision dealing with remedies between the parties. COMMITTEE ON NEGOTIATED ACQUISITIONS, AM. BAR ASS'N, MODEL STOCK PURCHASE AGREEMENT WITH COMMENTARY at 195 (1995) ("Modern usage and practice have redefined the term 'indemnification' in the acquisition context to refer to compensation for all losses and expenses, from any source, caused by a breach of the acquisition agreement (or other specified events)."). Use of the word "indemnity" in §8.3, therefore, should not be enough to make §8.3 inapplicable to Count III.

Likewise, most of the provisions of Article 8 make no sense if they govern disputes when the plaintiff labels its claim "indemnity for breach of representations and warranties," but not when the plaintiff labels its claim as "common law claim for breach of contractual representations and warranties." For example, §8.4 (labeled "Indemnity Threshold") states that Kayne must suffer at least $400,000 of losses before Kayne is entitled to recover for any claim within the scope of §8.2 (including claims for breach of representations and warranties), and §8.5 (labeled "Indemnity Cap") imposes a cap on any such recoveries. According to Kayne's logic, however, Kayne can evade these minimum and maximum damage amounts simply by omitting the word "indemnity" from a claim for breach of representations and warranties.

Similarly, §8.1 provides a contractual statute of limitations period for the representations and warranties made by the Defendants in the Purchase Agreement. Under Kayne's theory of the Purchase Agreement, Kayne can evade these limitations periods simply by labeling a claim for breach of representations and warranties "common law" rather than "indemnity." *Compare Shaw v. Aetna Life Ins. Co.*, 395 A.2d 384, 387 (Del. Super. Ct. 1978) ("The Delaware decisions follow the general principle that contractual limitation of actions periods are valid if they are reasonable.").

16

To objective, reasonable people in the position of the contracting parties, *GB Biosciences Corp. v. Ishihara Sangyo Kaisha, Ltd.*, 270 F. Supp. 2d 476, 481 (D. Del. 2003), the idea that negotiated damages limits and survival periods apply only based on the label affixed to a claim is not a reasonable construction of the agreement. Reasonable objective people understand these provisions, even though phrased in terms of "indemnity," to encompass all variations of a claim for breach of contractual representations and warranties. And if these sections apply to Kayne's claim, notwithstanding their use of the word "indemnity," so should §8.3.

None of the cases Kayne cites are to the contrary. *Gotham Partners*, *Reid*, and the cases Kayne cites in footnote 12 of its brief only treat the standard that applies when a contractual provision is alleged to displace a common law remedy. *See Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 176 (Del. 2002); *Reid v. Thomson Homes at Centreville, Inc.*, 2007 WL 4248478 (Del. Super. Nov. 21, 2007) We are not asserting that §8.3 displaces any common law remedy, but rather only that the parties agreed in §8.3 to a condition precedent that Kayne must satisfy before it can seek damages for breach of representation and warranties based on a diminution in value theory (e.g., that Kayne not bring a claim for breach of contractual representations and warranties unless Kayne has suffered either an actual loss or the Operating Companies cannot meet their obligations under the Purchase Agreement or the Restated LLC Agreement). The question here is not displacement of a remedy at all.

**B.      Kayne Has No Credible Response To Our Argument That The Complaint Fails To Allege Facts Sufficient To Show Compliance With The §8.3 Condition Precedent.**

In our opening brief, we stated that the damages for a cause of action like Count III are diminution in value damages. (Op. Br. at 25). Kayne does not cite or discuss these cases, and it appears that Kayne does not take issue with this general – and uncontested – rule of damages.

17

Kayne also did not take issue with the clear and unambiguous construction of §8.3 set forth in our Opening Brief; Kayne only disputed whether this plain and unambiguous construction of §8.3 applies to a claim not labeled "indemnity." Thus, if §8.3 applies to Count III, the only question remaining is whether Kayne's answering brief demonstrates that the complaint adequately alleges actual damages or alleges that the Operating Businesses cannot meet their obligations under the Purchase Agreement or the Restated LLC Agreement, the two conditions precedent found in §8.3.

Kayne first claims that paragraph 30 of the Complaint pleads an actual loss because the Company has had its assets frozen and is presently in control of a receiver. Kayne only asserts – but does not support with any citation to any authority – that paragraph 30 is anything other than the assertion of a diminution in value theory. In fact, as discussed in our Opening Brief, this allegation does not satisfy §8.3 because it does not describe an actual loss suffered by <u>Kayne</u>. The fact that the company has suffered adversity may have caused the value of Kayne's investment to decrease, but that is precisely what "diminution in value" means.

Kayne also lists its allegations in paragraphs 53 (alleging Kayne lost its investment) and 54 (alleging $24 million in losses) and cites two cases, *Shamrock Holdings* and *Tracinda*, for the proposition that these allegations adequately allege that an investment has decreased in price under the rules. We agree that Kayne's allegations would suffice for breach claims not governed by the condition precedent in §8.3, which is all that the plaintiffs in *Shamrock Holdings* and *Tracinda* alleged. *See Shamrock Holdings, Inc. v. Arenson*, 456 F. Supp. 2d 599 (D. Del. 2006) *Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 42 (D. Del. 2002). But here, in the face of a condition precedent in §8.3 that Kayne's brief concedes is clear and unambiguous, Kayne never explains why its mere recitation of its ultimate conclusion – that it has lost its investment –

18

meets the contractual condition precedent of "actual loss," particularly in light of the standard announced in Tw*ombly* that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 n.3 (2007).

Finally Kayne alleges that paragraph 53 of the complaint is sufficient to allege facts showing that the Company "will not be able to meet its obligations." (Ans. Br. at 30). That is not what §8.3 requires, however. Section 8.3 requires that Kayne plead that the company will not be able to meet its obligations under the Purchase Agreement or the Restated LLC Agreement. In our Opening Brief we stated that not only are there no present obligations under either agreement that have gone unsatisfied so far, but that the first possible obligation §8.3 could reference will not occur until 2012. Again, the answering brief does not dispute these points.

19

## CONCLUSION

For the reasons set out more fully herein, Defendants respectfully request the Court to stay or dismiss this action.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3312 )
Michele Sherretta Budicak (No. 4651)
James L. Higgins (No. 5021)
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com
mbudicak@ycst.com
jhiggins@ycst.com

*Attorneys for Defendants Roy Eliasson, Bryon Wolf, and Alfred Wolf*

Dated:  May 1, 2008

20

## CERTIFICATE OF SERVICE

I, Michele Sherretta Budicak, Esquire, hereby certify that on May 1, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> John C. Phillips, Jr., Esquire
> Phillips Goldman & Spence, P.A.
> 1200 North Broom Street
> Wilmington, DE 19806

I further certify that on May 1, 2008, I caused a true and correct copy of the foregoing document to be served by e-mail and hand delivery on the above-listed counsel of record.

> YOUNG CONAWAY STARGATT
> & TAYLOR, LLP
>
> John W. Shaw (No. 3362)
> jshaw@ycst.com
> Michele Sherretta Budicak (No. 4651)
> mbudicak@ycst.com
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware 19899
> (302) 571-6600